UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SCOTT FITZGERALD,

    Plaintiff,

v.

BOSCO CREDIT, LLC, et al.,

    Defendants.

Case No. 16-cv-01473-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. Nos. 20, 22

## INTRODUCTION

Plaintiff Scott Fitzgerald ("Plaintiff") filed this action against Defendants Bosco Credit, LLC ("Bosco"), Franklin Credit Management Corporation ("Franklin"), and T.D. Service Financial Corporation ("T.D.") related to foreclosure activities involving his home. *See* First Am. Compl. ("FAC"), Dkt. No. 15. Pending before the Court are two Motions to Dismiss Plaintiff's FAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6): (1) Bosco and Franklin's Motion to Dismiss ("BF Mot.") (Dkt. No. 22) and (2) T.D.'s Motion to Dismiss ("T.D. Mot."[1]) (Dkt. No. 20). Plaintiff filed Oppositions ("BF Opp'n," Dkt. No. 29; "T.D. Opp'n," Dkt. No. 21), and Defendants filed Replies ("BF Reply," Dkt. No. 31; "T.D. Reply," Dkt. No. 26). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motions as to the first through fourth causes of action but **ORDERS** supplemental briefing as to the fifth cause of action as set forth below.

---

[1] T.D. filed its Motion and Memorandum of Points and Authorities separately, in different docket numbers. *See* T.D. Mot. & Notice of Mot., Dkt. No. 20; T.D. Mem. P. & A., Dkt. No. 20-1. In this District, all motions and points and authorities must be filed in "one filed document" as required by Civil Local Rule 7-2. For purposes of this Order, when referring to "T.D. Mot." the Court is citing to Dkt. No. 20-1.

# BACKGROUND[2]

Plaintiff is the owner of the property located at 1075 Redondo Way, Livermore, California 94550 (the "Property"). FAC ¶ 12. The Property is Plaintiff's principal residence and is security for a loan made for personal, family, and/or household purposes. *Id.* Specifically, around October 2004, Plaintiff obtained a secured mortgage loan—which appears to be a home equity line of credit—with CalState 9 Credit Union (the "Loan"). *See id.* ¶ 13. Around May 2008, Plaintiff's Loan transferred to Defendant Bosco, and Defendant Franklin began servicing the Loan. *Id.*

Around January 2010, Plaintiff fell behind in his mortgage payments; he filed a Chapter 7 bankruptcy petition in the Northern District of California on December 13, 2010. *Id.* ¶ 14. At the time of Plaintiff's bankruptcy, the Property was underwater. *Id.* Plaintiff "is informed and believes" that on December 13, 2010, the Property was valued at $400,000, while the debt owed on the Property totaled approximately $565,000. *Id.* He alleges the amount of the secured debt against the Property was more than the value of the Property until the middle or end of 2015. *Id.* On March 8, 2011, Plaintiff received a discharge, and he believed his personal obligation to pay the debt had been discharged as well. *Id.* ¶ 15. As Plaintiff asserts, he "listed the debt owed to Bosco Credit, LLC in his Chapter 7 petition and did not reaffirm the debt." T.D. Opp'n at 1. Consequently, Plaintiff believes he "is no longer personally liable on the loan owed to Bosco Credit, LLC." *Id.*

On October 20, 2015, Franklin, on behalf of Bosco, sent Plaintiff a statement that indicated a default had occurred on the Note and Deed of Trust for the Loan secured by the Property. FAC ¶ 17. Specifically, according to the Notice of Default and Intent to Accelerate, Franklin sent Plaintiff the notice "on behalf of BOSCO CREDIT, LLC, the Creditor to whom the debt is owed[,]" that Plaintiff was past due in his payments since January 20, 2010. *Id.* The Notice stated the total delinquency owed on the Loan was $59,381.07—and of that amount, $45,734.88 was charged interest and $495.00 was late charges. *Id.* Plaintiff alleges Franklin, again on behalf of Bosco, caused T.D. to record a Notice of Default, which indicated that the amount necessary to

---

[2] Except where otherwise indicated, the following allegations are taken from Plaintiff's FAC.

2

reinstate the Loan was $62,080.53, for principal and interest which became due on the Loan since January 2010. *Id.* ¶ 18. Plaintiff also alleges that on December 11, 2015, T.D. Service sent Plaintiff correspondence on behalf of Bosco stating that as of December 15, 2015, the delinquency owed for the Property was $62,080.53 and the total amount owed on the Loan was $95,038.32 for unpaid principal, plus accrued interest, any accrued insufficient funds fees, escrow advances, late charges, or suspense credits, and attorney and/or trustee fees and costs. *Id.* ¶ 19. Then on February 25, 2016, T.D. Service sent Plaintiff a payoff statement which indicated the total amount necessary to pay off the Loan was $148,338.35, which included $95,038.32 in principal, $51,745.33 in interest, $495 in fees, and $1,014.70 in foreclosure fees and costs. *Id.* ¶ 20. Plaintiff alleges these monetary demands are improperly inflated and contends that "despite the Bankruptcy Code's very clear prohibition on the accrual of interest when a secured property is underwater, Defendants charged Plaintiff interest on [t]he loan while the loan was underwater and are now demanding that [he] pay the interest as a condition of reinstatement." *Id.* ¶ 1.

Plaintiff initially filed suit March 24, 2016. Dkt. No. 1. He filed his FAC on May 2, 2016, alleging five causes of action (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, against T.D. for allegedly making inflated monetary demands; (2) another violation of the FDCPA § 1692e against T.D. for allegedly misrepresenting the status of a debt owed; (3) a violation of California's Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act" or "RFDCPA"), Cal. Civ. Code § 1788.17, against Bosco for allegedly making inflated monetary demands; (4) another violation of the Rosenthal Act, section 1788.17, against Bosco for allegedly misrepresenting the status of a debt owed; (5) a violation of Cal. Civ. Code § 2924c against Bosco and Franklin for allegedly interfering with his statutory reinstatement of the loan by sending Plaintiff reinstatement notices that included amounts for unlawfully charged interest on Plaintiff's Loan while it was the Property was underwater. *See generally* FAC.

Now both T.D. and Bosco move to dismiss, arguing first that they are not debt collectors within the meaning of the FDCPA and Rosenthal Act, respectively. *See generally* T.D. Mot.; *see also* BF Mot. at 8-12. Second, they contend their activities related to Plaintiff's Property and Loan are not actionable under these laws. *Id.* (both). Finally, Bosco and Franklin contend that

Plaintiff's section 2924c claim does not contain sufficient facts to state a claim and is based on a federal statute that does not apply in this instance. BF Mot. at 13-14.

## REQUESTS FOR JUDICIAL NOTICE

Before proceeding to the substantive arguments, the Court addresses Defendants' Requests for Judicial Notice. Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Documents in the public record may be judicially noticed to show, for example, that a judicial proceeding occurred or that a document was filed in another case, but a court may not take judicial notice of findings of facts from another case. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record."). Nor may a court take judicial notice of any matter that is in dispute. *Lee*, 250 F.3d at 689-90; *see also Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n.13 (9th Cir. 1998) (finding judicial notice inappropriate where the facts to be noticed were not relevant to the disposition of the issues before the court).

### A. T.D.'s Request for Judicial Notice

T.D. requests the Court take judicial notice of one document: a Notice of Default, recorded December 9, 2015 in the office of the Alameda County Recorder. T.D. Req., Dkt. No. 20-2; *see also id.*, Ex. A (Notice of Default). Plaintiff did not object to this request. Having reviewed the document and the relevant legal authority, the Court finds it appropriate to take judicial notice of the Notice of Default as matters of the public record. *See Frank v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 3055901, at *3 (N.D. Cal. May 31, 2016) (taking judicial notice of a notice of default as a matter of the public record). The request for judicial notice of Exhibit A is thus **GRANTED**.

### B. Bosco and Franklin's Request for Judicial Notice

Bosco and Franklin request the judicial notice of five documents (BF Req., Dkt. No. 22-1):

1. A Revolving Credit Deed of Trust recorded on October 18, 2004 in the Official Records of the Alameda County Recorder's Office. *See id.*, Ex. 1.

4

2. An Assignment of Deed of Trust to Bosco, recorded on July 8, 2008 ("Assignment"). *See id.*, Ex. 2.

3. Plaintiff and M. Fitzgerald's voluntary Chapter 7 bankruptcy petition filed on December 13, 2010 in the United States Bankruptcy Court, Northern District of California, Case No. 10-74257-EDJ ("Bankruptcy Case"). *See id.*, Ex. 3.

4. The Discharge of Debtor and Final Decree in Plaintiff's Bankruptcy Case issued on March 8, 2011. *See id.*, Ex. 4.

5. The Notice of Default and Election to Sell Under Deed of Trust recorded as Instrument No. 2015323988 by the County Recorder on December 9, 2015. *See id.*, Ex. 5. This is the same document the Court has taken judicial notice of above. *See* T.D. Req., Ex. A.

Plaintiff did not object to Defendants' request, and given the nature of these documents as matters in the public record, the Court finds it appropriate to take judicial notice of them. Defendants' request to take judicial notice of Exhibits 1-5 is therefore **GRANTED**.

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the

5

speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). A court may also "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted); *see also Lee*, 250 F.3d at 688 ("If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." (quotation omitted)).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

### A.  FDCPA and Rosenthal Act Claims

The first four causes of action in Plaintiff's FAC relate to claims for alleged violations of the FDCPA (against T.D.) and California's Rosenthal Act (against Bosco). Under the provisions of the FDCPA, 15 U.S.C. § 1692, debt collectors are prohibited "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). Similarly, California's Rosenthal Act, "like its federal counterpart, is designed to protect consumers from unfair and abusive debt collection practices." *Robinson v. Managed Accounts Receivable Corp.*, 654 F. Supp. 2d 1051, 1060 (C.D. Cal. 2009) (citing Cal.

Civ. Code § 1788.1). The Rosenthal Act in fact incorporates provisions of the FDCPA in Civil Code section 1788.17. Consequently, conduct by a debt collector that violates the FDCPA generally violates the Rosenthal Act as well. *See Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012); *Crockett v. Rash Curtis & Assocs.*, 929 F. Supp. 2d 1030, 1033 (N.D. Cal. Mar. 14, 2013). However, not all violations of the Rosenthal Act violate the FDCPA. *See Warwick v. Bank of N.Y. Mellon*, 2016 WL 2997166, at *19-20 (C.D. Cal. May 23, 2016) (distinguishing Rosenthal Act and FDCPA).

The Court addresses first the FDCPA claims against T.D., and then turns to the Rosenthal Act claims against Bosco.

### 1. FDPCA Claims: First and Second Causes of Action

T.D. challenges Plaintiff's FDCPA claims on the ground that "all of [Plaintiff's] allegations against T.D. concern its processing of foreclosure proceedings[,]" thus "T.D. is not collecting the underlying debt" but "merely foreclosing on the security." T.D. Mot. at 1. It points out that as a trustee, it owed "no duty to second guess the figures and other information provided by the beneficiary seeking to foreclosure." *Id.* at 3. Moreover, it notes that courts in this circuit have found that "nonjudicial foreclosure does not constitute 'debt collection' under the FDCPA." *Id.* (citations omitted). It explains that as it is the trustee it "is not collecting a debt. Rather it is merely complying with its statutory duties in processing a foreclosure pursuant to the terms of the power of sale contained in the debt of trust." *Id.* at 4. In other words, "[i]t is performing the statutorily prescribed acts to recover the pledged real property security pursuant to that power of sale, not collecting the underlying debt itself." *Id.*

In response, Plaintiff argues his FDCPA "claims against T.D. [] are based on its attempts to collect an inflated balance from Plaintiff in its demands to Plaintiff in December 2015 and February 2016, not non-judicial foreclosure activity, such as recording a Notice of Default." T.D. Opp'n at 4. He contends he makes "no allegation that T.D. [] was acting as a foreclosure trustee[,]" so T.D.'s argument related to its trustee duties must fail. *Id.* Finally, Plaintiff argues T.D.'s Motion should be denied because it "has not presented a single authority or judicially noticeable fact which supports its assertion that it was not a debt collector." *Id.* For his part,

7

1  Plaintiff argues T.D. is a debt collector under the FDCPA because "it's only logical that an entity
2  which provides pay off figures at the request of the debtor and on behalf of the creditor is, in fact,
3  acting as a debt collector for that creditor." *Id.*

4  "There are four elements to an FDCPA cause of action: (1) the plaintiff is a 'consumer'
5  under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal
6  purposes; (3) the defendant is a 'debt collector' under 15 U.S.C. § 1692a(6); and (4) the defendant
7  violated one of the provisions contained in 15 U.S.C. §§ 1692a-1692o." *Wheeler v. Premiere
8  Credit of N. Am., LLC*, 80 F. Supp. 3d 1108, 1112 (S.D. Cal. 2015) (citing *Turner v. Cook*, 362
9  F.3d 1219, 1226-27 (9th Cir. 2004)).  The FDCPA defines "debt collector" as including any
10 person: (1) "who uses any instrumentality of interstate commerce or the mails in any business the
11 principal purpose of which is the collection of any debts," or (2) "who regularly collects or
12 attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to
13 another."  15 U.S.C. § 1692a(6).

14 "[W]hether the defendant qualifies as a 'debt collector' under the Act . . . depends on
15 whether the defendant is a creditor or servicer, and whether the debt was assigned before or after
16 default." *Warwick*, 2016 WL 2997166, at *16.  Specifically, "FDCPA claims are limited to
17 collection activities on debts 'owed or due another' where the debt is acquired <u>after</u> default on the
18 loan[.]"  *Id.* (emphasis in original); *see* 15 U.S.C. § 1692a(6)(F)(iii) (a "debt collector" does not
19 include a person who collects or attempts to collect a debt "to the extent such activity . . . concerns
20 a debt which was not in default at the time it was obtained by such person[,]" among other things);
21 *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1074-76 (9th Cir. 2011) (defendant exempt from
22 the definition of "debt collector" under § 1692a(6)(F)(iii) because it acquired the right to collect a
23 debt *before* the debt was in default); *Jara v. Aurora Loan Servs.*, 852 F. Supp. 2d 1204, 1211
24 (N.D. Cal. 2012) (plaintiff failed to state FDCPA claim where defendant "became servicer to
25 [plaintiff's] loan long before he defaulted"), *aff'd sub nom. Jara v. Aurora Loan Servs., LLC*, 633
26 F. App'x 651 (9th Cir. Jan. 29, 2016); *accord Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th
27 Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector
28 does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt,

as long as the debt was not in default at the time it was assigned."). As the Sixth Circuit explains:

> For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred.

*Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012); *see Perez v. Ocwen Loan Servicing, LLC*, 2015 WL 9286554, at *2 (E.D. Cal. Dec. 21, 2015) (quoting same). Courts have applied this rationale in assessing whether a loan trustee is a debt collector under the FDPCA. *See, e.g.*, *Natividad v. Wells Fargo Bank, N.A.*, 2013 WL 2299601, at *4 (N.D. Cal. May 24, 2013) ("If Plaintiffs' debt was not 'in default' when First American became the trustee, First American was not a 'debt collector' and is not subject to the FDCPA.").

However, "[e]ven if a defendant qualifies as a debt collector, liability will not lie unless the defendant engages in activities prohibited by the FDCPA." *Warwick*, 2016 WL 2997166, at *17; *see* 15 U.S.C. § 1692f (defining unfair practices under the FDCPA, with subpart (6) discussing violations for "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property"). While the Ninth Circuit has not specifically addressed whether foreclosure proceedings constitute debt collection under FDCPA[3], "district courts in the Ninth Circuit have consistently concluded that nonjudicial foreclosure actions do not constitute debt collection under the FDCPA to the extent a defendant's actions are limited to those necessary to effectuate the nonjudicial foreclosure." *Barria v. Wells Fargo Bank, N.A.*, 2016 WL 474319, at *5 (E.D. Cal. Feb. 8, 2016) (collecting cases). Two cases from fellow magistrate judges in this district persuade the Court that this interpretation is the correct one. *Natividad*, 2013 WL 2299601, at *6-8 (Corley, M.J.) (applying "well-established" principles of statutory construction

---

[3] In an unpublished decision, the Ninth Circuit found that the act of providing notice of a pending foreclosure sale is not a debt collection activity under the FDCPA. *See Santoro v. CTC Foreclosure Serv.*, 12 F. App'x 476, 480 (9th Cir. 2001). But "it has not ruled on the question whether the act of foreclosing on a deed of trust is a form of 'debt collection' within the meaning of the FDCPA or the Rosenthal Fair Debt Collection Practices Act." *Vann v. Wells Fargo Bank*, 2012 WL 1910032, at *17 (N.D. Cal. May 24, 2012).

in analyzing 15 U.S.C. § 1692a(6) and 15 U.S.C. § 1692f(6) to determine what acts constitute "debt collection" under the FDCPA, and concluding that "regardless of whether 'debt collector' as defined in a dictionary can encompass the enforcement of secured interests, for purposes of the Act a 'debt collector' does not include one engaged in the mere enforcement of security interests."); *Jara*, 2011 WL 6217308, at *5 (Beeler, M.J.) (also weighing the statutory language in 15 U.S.C. § 1692a(6) and 15 U.S.C. § 1692f(6) to find that "[a]cts required to institute foreclosure proceedings, such as the recording of a notice of default, alone, are not debt collection activities for purposes of the FDCPA unless alleged in relation to a claim for violation of 15 U.S.C. § 1692f(6)."); *but see Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) (finding "the activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA. Accordingly, any actions taken by [the defendant] in pursuit of the actual foreclosure may not be challenged as FDCPA violations.").

Courts have, however, noted that "persons who regularly or principally engage in communications with debtors concerning their default that go beyond the statutorily mandated communications required for foreclosure may be considered debt collectors." *Natividad*, 2013 WL 2299601, at *8; *Perez*, 2015 WL 9286554, at *3 (finding that while foreclosing on a property is generally not considered "debt collection," "[a]ctions 'beyond mere foreclosure proceedings,' may be considered debt collection." (quotation omitted)); *see also Lohse v. Nationstar Mortg.*, 2014 WL 5358966, at *8 (N.D. Cal. Oct. 20, 2014) ("Plaintiffs' FDCPA claim against Nationstar is based on Nationstar's failure to report to credit reporting agencies that Plaintiffs' debt was disputed after receiving what Plaintiffs describe as a 'validation of debt' letter . . . and there is no apparent connection between Nationstar's communications with credit reporting agencies and the nonjudicial foreclosure process"); *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1137 (N.D. Cal. 2013) (denying motion to dismiss FDCPA claim because challenged acts were related to loan modification negotiations as opposed to execution of nonjudicial foreclosure process). Thus, "while the Court rejects Plaintiffs' argument to the extent they assert that *all* actions related to nonjudicial foreclosure are considered debt collection, the Court also rejects Defendants' argument to the extent they contend that *any* action related to a nonjudicial foreclosure cannot be

considered debt collection." *Natividad*, 2013 WL 2299601, at *8 (emphasis in original).

In light of the foregoing and having reviewed Plaintiff's FAC, the Court finds Plaintiff has not asserted plausible FDCPA claims at this time. First, while neither party addresses whether the debt was assigned for servicing before the default or alleged default occurred, it appears T.D.'s involvement with the Loan came after Plaintiff was apparently in default. *See* FAC ¶¶ 17-20 (indicating Defendants informed Plaintiff he was past due in his Loan payments *since January 20, 2010* but that T.D. only sent Plaintiff correspondence on December 11, 2015 and February 25, 2016 about the delinquency owed for the Property); *see also De Dios*, 641 F.3d at 1074 & 1075 n.3 ("Although the Act does not define 'in default,' courts interpreting § 1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at issue[,]" and "[t]he Act's legislative history is consistent with construing 'in default' to mean a debt that is at least delinquent, and sometimes more than overdue."). While, as noted, the parties did not address the timing of the default in their papers, given the facts alleged and the absence of contrary authority or argument, the Court finds T.D. has not met its burden on its motion to dismiss to show Plaintiff's debt was not in default. *See, e.g.*, *Natividad*, 2013 WL 2299601, at *4 (finding same).

However, second, the Court must still determine whether T.D.'s actions, as alleged by Plaintiff, plausibly establish that T.D. engaged in debt collection activities. Plaintiff's FDCPA claims against T.D. are based on alleged violations of 15 U.S.C. § 1692(e) (*see* FAC ¶¶ 21-43), which prohibits the use of false, deceptive, or misleading misrepresentations. Plaintiff alleges two specific misleading communications from T.D.: (1) on December 11, 2015, a correspondence indicating the letter was an attempt to collect a debt owed to Bosco (*id.* ¶¶ 19, 26, 39); and (2) on February 25, 2016, a payoff demand on behalf of Bosco (*id.* ¶¶ 20, 27, 39).[4] According to T.D., it "did not send demand letters concerning the underlying debt." T.D. Reply at 2. Rather, it contends it is "merely the trustee processing the judicial foreclosure of plaintiff's property" and

---

[4] Although not in the Statement of Facts, in the allegations alleged under the individual claims, Plaintiff generally alleges that "Beginning in or around December 2013, Defendant T.D. Service began making overinflated debt collection demands of Plaintiff in connection with its collection of the debt owed to Bosco Credit, LLC." FAC ¶¶ 25, 38. It is unclear whether this is a repeated typographical error where Plaintiff intended to write 20*15* instead of 20*13*, but in any event, there are no further descriptions about what "demands" T.D. made to Plaintiff or when.

11

1  "[i]t merely provided default figures allowing plaintiff to reinstate and pay of the loan pursuant to
2  Civil Code §2924c(e) and thereby to avoid the foreclosure sale." *Id.* at 1-2.  T.D.'s Motion
3  explains "[i]t merely served the Notice of Default required by Civil Code §[]2924, and *at*
4  *plaintiff's request* obtained from the beneficiary and provided to plaintiff the figures that would
5  allow plaintiff to reinstate the loan pursuant to Civil Code section 2924c(e) as well as figures
6  reflecting the total debt claimed by the beneficiary."  T.D. Mot. at 4 (emphasis added).  Plaintiff
7  does not dispute the foregoing, except to (1) assert he did not specifically allege T.D. is the trustee,
8  and (2) argue T.D.'s statement that "it merely provided debt payoff figures at Plaintiff's request
9  and figures reflecting the total debt owed claimed by the beneficiary . . . . suggests that [T.D.] was,
10  in fact, acting as a debt collector on behalf of the beneficiary of Plaintiff's loan, since it's a logical
11  connection that a request for pay off figures would be made to the entity collecting the debt
12  owed."  T.D. Opp'n at 1.  Ultimately, while Plaintiff urges the Court to find these issues are purely
13  factual questions and thus inappropriate for resolution on a motion to dismiss, that argument
14  ignores the fact that the Court must assess the plausibility of Plaintiff's claims.  *See id.* at 3
15  (Plaintiff acknowledges "[a] claim has facial plausibility when [he] pleads factual content that
16  allows the court to draw the reasonable inference that the defendant is liable for the misconduct
17  alleged." (quoting *Iqbal*, 556 U.S. at 678)).

18  The Court cannot ignore the context of Plaintiff's allegations and the other facts he has
19  pleaded.  Plaintiff explicitly alleges T.D. "record[ed] a Notice of Default" (FAC ¶ 18) and all but
20  admits T.D. was the trustee in arguing that T.D. could be both a trustee and a debt collector.  *See*
21  T.D. Opp'n at 4-5 (arguing that being a foreclosure trustee and a debt collector are not "mutually
22  exclusive" roles and that "the demands at issue contain the express language that T.D. Service's
23  correspondence were 'an attempt to collect a debt.'"); *see also Warwick*, 2016 WL 2997166, at *3-
24  4 (generally acknowledging there are four parties in a typical foreclosure case: the trustor (the
25  debtor), the beneficiary (the lender), the trustee (a "common agent" for the borrower-trustor and
26  beneficiary-lender who essentially executes the trust), and finally, the loan servicer (who generally
27  collects payments and performs other mortgage servicing obligations)); FAC ¶ 6 (alleging Bosco
28  is the beneficiary); *id.* ¶ 7 (alleging Franklin is the servicer).  Plaintiff did not object to the Court

taking judicial notice of the Notice of Default or suggest there are any facts in dispute in that Notice related to whether T.D. was the trustee. *See supra*, Reqs. for Judicial Notice. Instead, Plaintiff seems to argue that the absence of an allegation (i.e., that T.D. was the trustee), creates a factual dispute requiring the parties to move forward to summary judgment before resolution. In this context though, the Court cannot rest on the absence of a factual allegation to prohibit T.D.'s legal argument. *See Martin K. Eby Const. Co. v. Jacobs Civ., Inc.*, 2006 WL 1881359, at *12 (M.D. Fla. July 6, 2006) (plaintiff argued "the Court's analysis on motion to dismiss is limited to the face of the amended complaint[,]" and amended its complaint to "replac[e] [] specific references with more generic and vague allegations . . . to avoid the consequences of the doctrines of *res judicata* and collateral estoppel[,]" but ultimately the court discerned from the other allegations that the claims were barred as a matter of law); *see also Pawlak v. Nix*, 1996 WL 560360, at *5 (E.D. Pa. Sept. 30, 1996) (finding plaintiff's claims barred even though she had not alleged certain facts in a specific attempt to avoid application of the *Rooker-Feldman* doctrine).

Ultimately, Plaintiff has not alleged facts indicating T.D. went beyond the statutorily mandated communications required for foreclosure. *See Rockridge*, 985 F. Supp. 2d at 1136 (plaintiffs did not allege facts showing the defendant actually went beyond the scope of what is needed to complete an "ordinary" nonjudicial foreclosure process in California). First, "a notice of default is a statutorily required communication that must be provided to the mortgagor to enforce the security interest." *Natividad*, 2013 WL 2299601, at *9 (citing Cal. Civ. Code § 2923.3). Second, the fact that T.D. included express language that T.D. Service's correspondences were "an attempt to collect a debt" is not dispositive. As the *Natividad* court acknowledged, "[r]ather than establishing that [the trustee] was engaged in debt collection activity, this [debt collection] warning is consistent with the inconsistency in the caselaw regarding a mortgage foreclosure trustee's FDCPA liability." *Id.* Third, the fact that Plaintiff requested information indicates T.D.'s follow-up communication was not in furtherance of debt collection but was responsive to Plaintiff's inquiry. Without more, the Court cannot find Plaintiff has alleged plausible facts that T.D. engaged in debt collection activities. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("[W]e

13

1  must assume that the [plaintiff] can prove the facts alleged in its amended complaint. It is not,
2  however, proper to assume that the [plaintiff] can prove facts that it has not alleged or that the
3  defendants have violated . . . laws in ways that have not been alleged.").

4  Accordingly, T.D.'s Motion to Dismiss Plaintiff's FDPCA claims is granted, but with
5  leave to amend in the event Plaintiff is able to allege facts supporting the elements of his FDCPA
6  claims as discussed above.

7      2. <u>Rosenthal Act Claims: Third and Fourth Causes of Action</u>

8  Bosco similarly argues it "is excluded from the Rosenthal Act's definition of 'debt
9  collector'" because even if its actions "could be considered an attempt to recover past due
10 accounts, such collection was on its own debt prior to the default[.]" BF Mot. at 10. It contends
11 "there is nothing alleged in Plaintiff's First Amended Complaint to suggest that Moving
12 Defendants' conduct fell outside the scope of their obligations under statute or the Deed of Trust
13 with respect to the initiation and procession of non-judicial foreclosure." BF Reply at 3. In
14 response, Plaintiff again asserts his claims against Bosco "are based on its agent's attempts to
15 collect an inflated balance from Plaintiff in its demands to Plaintiff in December 2015 and
16 February 2016, not non-judicial foreclosure activity, such as recording a Notice of Default." BF
17 Opp'n at 5 (citing FAC ¶¶ 1, 48, 50, 51, 65).

18 The Rosenthal Act is intended "to prohibit debt collectors from engaging in unfair or
19 deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly
20 in entering into and honoring such debts[.]" Cal. Civ. Code § 1788.1(b). In addition to providing
21 its own standards governing debt-collection practices, the Rosenthal Act also requires that, with
22 limited exceptions, "every debt collector collecting or attempting to collect a consumer debt shall
23 comply with the provisions of" the FDCPA. *Id.* § 1788.17.

24 "[T]he Rosenthal Act's definition of 'debt collector' is 'broader than that contained in the
25 FDCPA.'" *Barria*, 2016 WL 474319, at *6 (quoting *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d
26 1193, 1199 (C.D. Cal. 2008)). The Rosenthal Act defines a "debt collector" as "any person who,
27 in the ordinary course of business, regularly, *on behalf of himself or herself or others*, engages in
28 debt collection." Cal. Civ. Code § 1788.2(c) (emphasis added). "Debt" is defined as "money,

property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person." *Id.* § 1788.2(d).  "Thus, a mortgage servicer may be a 'debt collector' under the Rosenthal Act even if it is the original lender, whereas, such an entity would be excluded from the definition of debt collector under the federal act." *Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011).

But as with the FDCPA, the mere allegation that a defendant foreclosed on a deed of trust is insufficient to state a claim under the Rosenthal Act. *Barria*, 2016 WL 474319, at *6; *see Reyes*, 2011 WL 30759, at *19 (collecting cases).  That said, where the claim arises out of debt collection activities *beyond the scope* of the ordinary foreclosure process, a remedy may be available under the Rosenthal Act. *Id.* (finding that allegedly deceptive statements in an offer letter related to a forbearance agreement were sufficient to state a claim under the Rosenthal Act). Furthermore, where the Rosenthal Act claim relies on a violation of the FDCPA, the FDCPA's standard applies. *See id.* at *20.

As the lender, Bosco falls within the Rosenthal Act's broader definition of a "debt collector." *See Izenberg*, 589 F. Supp. 2d at 1199; *Reyes*, 2011 WL 30759, at *19.  However, as with T.D. and Plaintiff's allegations under the FDCPA, Plaintiff's Rosenthal Act claim fails to allege conduct beyond the ordinary foreclosure process.  While Plaintiff alleges his "claims are wholly unrelated to foreclosure activity" but rather are "based on [Bosco's] agent's attempts to collect an inflated balance from Plaintiff in its demands to Plaintiff[,]" BF Opp'n at 5, he has not plausibly alleged that those "attempts" were based on anything more than the ordinary foreclosure process.  In other words, Plaintiff has not alleged plausible facts that Defendants *went beyond* the scope of the ordinary foreclosure process.

Finally, Plaintiff argues "Defendant cannot transform Plaintiff's claims into allegations pertaining to foreclosure activity, simply because a non-judicial foreclosure had been started monthly before the alleged misconduct." *Id.* at 5.  He contends doing so "would allow all lender/servicer activity which occurs after the initiation of a non-judicial foreclosure activity to be immune from the ambit of the FDCPA, which would wholly nullify the effect of the FDCPA as to lenders and servicers" and that "[i]f Defendant insists that its conduct was nonjudicial foreclosure

activity, then it must prove this fact with evidence on an evidence-based motion or at trial, not as part of a motion to dismiss pursuant to Rule 12(b)(6)." *Id.* at 5-6. But this argument fails for two related reasons. First, the case law in these circumstances indicates a plaintiff fails to assert a plausible claim under the Rosenthal Act (or the FDCPA) by merely alleging there was a debt collection activity when that activity relates solely to ordinary foreclosure proceedings. While Plaintiff is correct that no court has immunized all activities related to debt collection, courts have required a plaintiff to provide allegations specifically alleging how an alleged debt collector's actions go "beyond mere foreclosure proceedings[.]" *Perez*, 2015 WL 9286554, at *3; *see, e.g.*, *Rockridge Tr.*, 985 F. Supp. 2d at 1137 (plaintiff asserted plausible FDCPA claim where the challenged acts were related to loan modification *negotiations* as opposed to the execution of the nonjudicial foreclosure process). Second, and relatedly, the Court is not transforming Plaintiff's claims into allegations pertaining to foreclosure activities—as discussed above, Plaintiff's own allegations and arguments indicate Defendants were engaged in foreclosure related activities, which are largely confirmed by Defendants' judicially-noticeable documents. Indeed, Plaintiff's claim under California Civil Code section 2924c is based on allegations that Defendants interfered with his right to reinstate his loan (*see* FAC ¶ 81)—a right the section 2924c accords to debtors *before foreclosure*. *See* Cal. Civ. Code § 2924c.

That said, Plaintiff may be able to cure his claims by alleging facts demonstrating *how* Defendants' actions went beyond mere foreclosure proceedings or *how* they went outside of California's statutorily-required communications. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." (quoting *Twombly*, 550 U.S. at 557)). Accordingly, while the Court cannot at this time find Plaintiff has stated a plausible Rosenthal Act claim against Bosco and Franklin, Plaintiff is granted leave to amend in the event he is able to cure his allegations.

**B.     California Civil Code Section 2924c**

Plaintiff's final cause of action alleges Bosco and Franklin interfered with Plaintiff's right

of reinstatement pursuant to California Civil Code section 2924c, by improperly charging interest, fees, and other costs on Plaintiff's Property and doing so while it was underwater. FAC ¶¶ 73-74. Specifically, Plaintiff contends that pursuant to 11 U.S.C. § 506(b), "to the extent that a claim is secured by a property, the value of which is less than the amount of such claim, the creditor is not entitled to interest on such claim, fees, costs, or charges provided for under the agreement." BF Opp'n at 6-7 (citing 11 U.S.C. § 506(b)). Thus, Plaintiff alleges that the reinstatement amount provided by Franklin was improperly calculated because it included a demand for interest, fees, and costs as a condition of reinstatement and these charges should not have been included in the reinstatement amount. FAC ¶¶ 18, 19, 77-81.

Defendants challenge this claim on a number of grounds. First, they contend Plaintiff is "wrong" that 11 U.S.C. § 506(b) does not entitle creditors to interest, fees, or other costs while the property is underwater. BF Mot. at 13. They note "the Code is silent on this aspect" and otherwise argue the Supreme Court has held such charges may be allowed. *Id.* (citing *Dewsnup v. Timm*, 502 U.S. 410, 417-18 (1992)). Second, they contend "Plaintiff fails to allege actual facts to show whether and to what extent the Property's value was 'underwater' or not." *Id.* Along those lines, Defendants contend the "Property value would require a judicially determined value before such argument could even be posed, and nothing related to same is alleged." *Id.* at 13-14.

In response, Plaintiff contends *Dewsnup* is not relevant to this case, as it deals solely with 11 U.S.C. § 506*(d)* and "made no ruling on 11 U.S.C. § 506*(b)*, which governs the amount of fees a creditor can add into its secured claim and which Plaintiff alleges Defendant has violated." BF Opp'n at 7 (emphasis added). He further contends his allegations related to the value of the Property must be accepted as true at this stage in the proceedings, while acknowledging he "will ultimately have to prove the value of his property since his bankruptcy filing to prevail on his claims[.]" *Id.* at 8. In Defendants' Reply, they do not attempt to reassert *Dewsnup*, but rather argue that "Plaintiff's primary dilemma . . . is that at no time during his Chapter 7 bankruptcy did the court ever adjudicate the fair market value of the real property interest – nor would it in a Chapter 7 – and there are no allegations that the court adjudicated the value at that time, or at any time prior to discharge." BF Reply at 3.

17

As an initial matter, in California, a trustor may have "the legal right to bring [his] account in good standing by paying all of [his] past due payments plus permitted costs and expenses within the time permitted by law." Cal. Civ. Code § 2924c(b)(1). To comply with the statute, a trustee must (1) issue a Notice of Default with the requisite statutory language; and (2) respond to requests for the amount necessary to reinstate the loan. *Id.* The Code further provides that "[r]einstatement of a monetary default under the terms of an obligation secured by a deed of trust, or mortgage may be made at any time within the period commencing with the date of recordation of the notice of default until five business days prior to the date of sale set forth in the initial recorded notice of sale." *Id.* § 2924c(e). Consequently, courts have recognized claims for what essentially amounts to interference with the exercise of reinstatement. *See, e.g.*, *Crossroads Inv'rs, L.P. v. Fed. Nat'l Mortg. Ass'n*, 246 Cal. App. 4th 529, 545-46 (2016), *review filed* (May 24, 2016) (plaintiff "established a prima facie case showing [defendant] violated Section 2924c by not providing it with the requested information to redeem the loan.").

It appears Plaintiff's section 2924c claim is based on such alleged interference. *See* FAC ¶ 81 ("Plaintiff alleges that Defendants' demands for interest, fees, and costs as a condition of reinstatement thereby interferes with Plaintiff's statutory right to reinstatement pursuant to Civil Code 2924c."). Plaintiff alleges the following:

> Pursuant to 11 U.S.C. § 506(b), "to the extent that an allowed secured claim is secured by property, the value of which is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." Thus, to the extent that a claim is secured by a property, the value of which is less than the amount of such claim, the creditor is not entitled to interest on such claim, fees, costs, or charges provided for under the agreement.

*Id.* ¶ 73.

Plaintiff does not cite any other cases in which a plaintiff raised purported violations of 11 U.S.C. § 506(b) as grounds for a reinstatement interference claim under section 2924c. Nor does Plaintiff cite any case law supporting his interpretation of 11 U.S.C. § 506(b) as applying in the manner he asserts. At the same time, Defendants' cite to *Dewsnup* is unhelpful as it does not apply to § 506(b). The parties give only short-shrift briefing on this issue. Consequently, before

ruling on this claim, the Court **ORDERS** the parties to provide supplemental briefing.  First, Plaintiff is **ORDERED** to respond to the following questions:

(1) Why Plaintiff believes 11 U.S.C. § 506(b) applies to his case and what legal authority supports his position, including whether there is specific case law supporting his position that a creditor cannot charge interest on an "underwater" property.  Plaintiff shall also address the timing of *when* a creditor may or may not charge interest, with specific legal citations.

(2) Plaintiff shall also explain *how* Defendants' purported violation of 11 U.S.C. § 506(b) interfered with his ability to reinstate his Loan under section 2924c and what specific allegations in the FAC support this argument.

Second, Defendants Bosco and Franklin are **ORDERED** to explain:

(1) Why they believe 11 U.S.C. § 506(b) does not apply to his case and what legal authority supports this position, including specific case law.  If Defendants still contend *Dewnsup* applies, they shall more fully articulate why they believe it applies.

The parties' initial briefs must be filed **by July 29, 2016**.  They may then file responsive briefs **by August 12, 2016**.  No supplemental brief shall be more than 6 pages, double-spaced.

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** Defendants' Motions to Dismiss Plaintiff's first through fourth causes of action **WITH LEAVE TO AMEND**.  Additionally, Plaintiff and Defendants Bosco and Franklin are **ORDERED** to file supplemental briefs in accordance with this Order.  The Court will assign a date for Plaintiff to file his amended complaint after ruling on Defendants' Motions with respect to Plaintiff's fifth cause of action.

**IT IS SO ORDERED.**

Dated: July 15, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge