UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SCOTT FITZGERALD,

          Plaintiff,

    v.

BOSCO CREDIT, LLC, et al.,

          Defendants.

Case No.  16-cv-01473-MEJ

**ORDER ON MOTION TO DISMISS RE: CAUSE OF ACTION 5**

Re: Dkt. No. 22

### INTRODUCTION

The Court earlier ruled on Motions to Dismiss filed by Defendants Bosco Credit, LLC ("Bosco"), Franklin Credit Management Corporation ("Franklin"), and T.D. Service Financial Corporation ("T.D."). *See* Order re: Mot. to Dismiss ("MTD Order"), Dkt. No. 38. However, in doing so, the Court left one matter unresolved and requested supplemental briefing from Plaintiff Scott Fitzgerald ("Plaintiff") and Defendants Franklin and Bosco (for purposes of this Order, "Defendants") concerning Plaintiff's Fifth Cause of Action. *Id.* at 18-19. Defendants and Plaintiff timely filed their supplemental responses. Pl.'s Resp., Dkt. No. 39; Defs.' Resp., Dkt. No. 40; Defs.' Reply, Dkt. No. 41; Pl.'s Reply, Dkt. No. 42. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motion to dismiss Plaintiff's Fifth Cause of Action **WITH LEAVE TO AMEND** as set forth below.

### BACKGROUND[1]

In the Fifth Cause of Action, Plaintiff alleges Defendants interfered with his right of reinstatement pursuant to California Civil Code section 2924c, by improperly charging interest,

---

[1] A complete background of the action is set forth in the Court's MTD Order.

United States District Court
Northern District of California

fees, and other costs on Plaintiff's mortgage and doing so while the secured property was underwater.  First Am. Compl. ("FAC") ¶ 81, Dkt. No. 15.  Specifically, Plaintiff alleges his loan was discharged as part of his Chapter 7 bankruptcy, and "[p]ursuant to 11 U.S.C. § 524[a](2), a discharges [sic] operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor."  *Id.* ¶ 72.  Plaintiff also contends that pursuant to 11 U.S.C. § 506(b), "to the extent that a claim is secured by a property, the value of which is less than the amount of such claim, the creditor is not entitled to interest on such claim, fees, costs, or charges provided for under the agreement."  Opp'n at 7 (quoting 11 U.S.C. § 506(b)), Dkt. No. 29.[2]  Thus, Plaintiff alleges Franklin provided an improperly calculated reinstatement amount because it included a demand for interest, fees, and costs as a condition of reinstatement and these charges should not have been included in the reinstatement amount.  FAC ¶¶ 18, 19, 77-81.

Defendants initially challenged this claim on two primary grounds.  First, they contested Plaintiff's reliance on 11 U.S.C. § 524(a)(2).  They argued that while a discharge following a Chapter 7 bankruptcy relieves a debtor of his personal liability, it does not relieve him of in rem liability.  Bosco & Franklin's Mot. to Dismiss ("BF Mot.") at 8, Dkt. No. 22.  Accordingly, they argued, "Bosco's in rem right remained" and "[i]n this case, Defendants had the right to notify [P]laintiff that foreclosure proceedings had been initiated and, to avoid non-judicial foreclosure on the property, to identify the outstanding due."  *Id.* at 9.  Second, they contended Plaintiff is "wrong" that 11 U.S.C. § 506(b) prohibits creditors from charging interest, fees, or other costs

---

[2] Plaintiff alleges the following:

> Pursuant to 11 U.S.C. § 506(b), "to the extent that an allowed secured claim is secured by property, the value of which is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."  Thus, to the extent that a claim is secured by a property, the value of which is less than the amount of such claim, the creditor is not entitled to interest on such claim, fees, costs, or charges provided for under the agreement.

FAC ¶ 73.

while the property is underwater.  *Id.* at 13.  They further argued "Plaintiff fails to allege actual facts to show whether and to what extent the Property's value was 'underwater' or not."  *Id.* Along those lines, Defendants contended the "Property value would require a judicially determined value before such argument could even be posed, and nothing related to same is alleged."  *Id.* at 13-14.

In its MTD Order, the Court noted that, in California, a trustor may have "the legal right to bring [his] account in good standing by paying all of [his] past due payments plus permitted costs and expenses within the time permitted by law."  Cal. Civ. Code § 2924c(b)(1).  To comply with the statute, a trustee must (1) issue a Notice of Default with the requisite statutory language; and (2) respond to requests for the amount necessary to reinstate the loan.  *Id.*  California law further provides that "[r]einstatement of a monetary default under the terms of an obligation secured by a deed of trust, or mortgage may be made at any time within the period commencing with the date of recordation of the notice of default until five business days prior to the date of sale set forth in the initial recorded notice of sale."  *Id.* § 2924c(e).  Consequently, courts have recognized claims for what essentially amounts to interference with the exercise of reinstatement.  *See, e.g.*, *Crossroads Inv'rs, L.P. v. Fed. Nat'l Mortg. Ass'n*, 246 Cal. App. 4th 529, 545-46 (2016), *review filed* (May 24, 2016) (plaintiff "established a prima facie case showing [defendant] violated Section 2924c by not providing it with the requested information to redeem the loan.").

The Court requested supplemental briefing regarding Plaintiff's section 2924c claim, particularly as Plaintiff cited no case law supporting his position that § 506(b) applied in the manner he asserted.  *See* FAC ¶ 81.  First, the Court requested supplemental briefing from Plaintiff on the following issues:

> (1) Why Plaintiff believes 11 U.S.C. § 506(b) applies to his case and what legal authority supports his position, including whether there is specific case law supporting his position that a creditor cannot charge interest on an "underwater" property.  Plaintiff shall also address the timing of *when* a creditor may or may not charge interest, with specific legal citations.
>
> (2) Plaintiff shall also explain *how* Defendants' purported violation of 11 U.S.C. § 506(b) interfered with his ability to

1    reinstate his Loan under section 2924c and what specific
     allegations in the FAC support this argument.

2    MTD Order at 19 (emphases in original).  Second, the Court requested that Defendants explain

3    "[w]hy they believe 11 U.S.C. § 506(b) does not apply to [Plaintiff's] case and what legal

4    authority supports this position, including specific case law."  *Id.*

5        This Order now addresses whether Plaintiff states a claim upon which relief can be granted

6    under California Civil Code section 2924c.

7                                    **LEGAL STANDARD**

8        Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain a "short

9    and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

10   8(a)(2).  A complaint must therefore provide a defendant with "fair notice" of the claims against it

11   and the grounds for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

12   quotations and citation omitted).

13       A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough

14   facts to state a claim to relief that is plausible on its face.  *Id.* at 570.  "A claim has facial

15   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

16   inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662,

17   678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

18   more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550

19   U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

20   detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

21   relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

22   cause of action will not do.  Factual allegations must be enough to raise a right to relief above the

23   speculative level."  *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).  In

24   considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and

25   construe them in the light most favorable to the plaintiff.  *Id.* at 550; *Erickson v. Pardus*, 551 U.S.

26   89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

27       If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

28   request to amend the pleading was made, unless it determines that the pleading could not possibly

United States District Court
Northern District of California

4

be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted).

### DISCUSSION

Having considered the parties' positions and the facts alleged in the FAC, the Court dismisses the Fifth Cause of Action at this time, with leave to amend. To state a claim for a violation of section 2924c, Plaintiff must show how Defendants interfered with efforts to reinstate his loan. Plaintiff premises his section 2924c claim on Defendants' purported violations of 11 U.S.C. § 524(a)(2) (discharge) and 11 U.S.C. § 506(b) (undersecured property). As discussed below, the Court finds Plaintiff has failed to allege facts sufficient to state an interference claim on either of these theories. Finally, more broadly, Plaintiff has not shown how Defendants interfered with his efforts to reinstate his loan; there are no facts, for instance, indicating Plaintiff sought to reinstate his mortgage, had the means to do so, or how each Defendant's specific actions interfered with his efforts to reinstate. Without more, Plaintiff presently fails to state a claim under section 2924c.

### A.      11 U.S.C. § 524(a)(2) – Discharge

Plaintiff's first theory is pursuant to 11 U.S.C. § 524(a)(2), under which he alleges a bankruptcy discharge prohibits creditors from attempting "to collect, recover or offset any such debt as a personal liability of the debtor." FAC ¶ 72. In his supplemental briefing, Plaintiff argues that "[b]y voiding the personal obligation between Plaintiff and Defendant, i.e. the promissory note, Defendant's ability to charge interest under the promissory note was voided, effective the date of discharge." Pl.'s Reply at 2-3. In a heading, he further asserts "[a] Chapter 7 Discharge Voids Personal Liability." *Id.* at 2. Thus, it appears Plaintiff alleges he is not personally liable for a debt to Bosco, though he concedes in rem liability remains. *See* Opp'n at 3-4 (indicating Plaintiff does not dispute in rem liability remains following a Chapter 7 discharge).

It is unclear how any purported violations of § 524(a)(2) interfered with Plaintiff's reinstatement rights under California law. Plaintiff's Fifth Cause of Action does little to describe why he believes Defendants' alleged § 524(a)(2) violation would give rise to a claim for interference of his reinstatement rights under California law. Indeed, Plaintiff's assertion of an

underlying § 524(a)(2) violation appears at odds with his overarching section 2924c interference claim.  On one hand, Plaintiff seems to allege Defendants unlawfully attempted to collect a discharged debt; on the other, he claims Defendants interfered with his right to reinstate the same debt.  Plaintiff cannot have it both ways.  While courts have recognized that § 524(a)(2) enjoins creditors from attempting to collect discharged debt as a personal liability,[3] Plaintiff has not explained how Defendants' alleged attempts to collect interfered with his right to reinstatement under section 2924c.  *See In re Goldston*, 2016 WL 1238220, at *5 (Bankr. S.D. Ohio Mar. 29, 2016) (where bank "representatives were making telephone calls in an attempt to pressure [debtor] to sign the loan modification documents . . . . after [debtor] made it clear that he was not going to sign the loan modification documents" then "[s]uch calls, if they occurred in the manner . . . allege[d], would constitute violations of the discharge injunction."); *In re Culpepper*, 481 B.R. 650, 660 (Bankr. D. Or. 2012) (in a contempt proceeding for alleged § 524(a)(2) violation, finding debtor "established by clear and convincing evidence that [bank] violated the discharge injunction under § 524(a)(2)" where "[bank] intended to continue to route calls to [debtor] in an effort to reinstate all of some of a discharged debt, i.e., the Loan, through a loan modification, after [debtor] had clearly advised knowledgeable, thinking [bank] employees that she was not interested in pursuing a modification of the Loan with [bank] and wanted the calls to stop."); *In re Vogt*, 257 B.R. 65, 71 (Bankr. D. Colo. 2000) ("Clearly, section 524(a)(2) is implicated if the creditor, after the debtor's discharge, writes a letter to the debtor saying: 'Your discharge be damned ——pay

---

[3] "[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).  Consequently, § 524(a)(2) applies only in in personam actions.  *In re Annen*, 246 B.R. 337, 340 (B.A.P. 8th Cir. 2000) ("As is evident from the plain language of the statute, the discharge injunction applies to *in personam* actions.  It does not apply to *in rem* actions.").  Specifically, § 524(a)(2) prohibits, among other things, "act[s] to collect, recover or offset any such debt as a *personal liability* of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. § 524(a)(2) (emphasis added). Section 524(a)(2)'s legislative history indicates that such acts "includ[e] telephone calls, letters, and personal contacts to collect, recover or offset any discharged debt as a personal liability of the debtor, or from property of the debtor, whether or not the debtor has waived discharge of the debt involved."  H.R. Rep. No. 95-595, at 365 (1977).  Thus, "[t]he injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts."  *Id.*

United States District Court
Northern District of California

6

your debt!'  This is exactly the kind of hectoring, dunning demand that Congress intended to stop.").  Plaintiff's section 2924c reinstatement claim seems premised on the notion that Defendants interfered with his right to reinstatement, but his decision to assert violations of § 524(a)(2) as a grounds for such interference does not make sense at this point.  While no party fully addressed this issue in their papers, at present, the FAC lacks a coherent section 2924c claim under the theory that Defendants violated § 524(a)(2).

Finally, even if Plaintiff is able to articulate a coherent theory about how a violation of § 524(a)(2) gives rise to the section 2924c claim, the FAC lacks sufficient facts to suggest that a § 524(a)(2) violation is more than speculative.  For instance, the FAC provides very few details about the bankruptcy discharge, what was included in that discharge, or why "Plaintiff is informed and believes that Defendant Bosco Credit, LLC was that Plaintiff's personal obligation to pay the debt had been discharged."  FAC ¶ 15 (errors in original).  Put another way, there are no facts indicating whether Plaintiff's discharge included his loan such that the loan is subject to § 524(a)(2)'s injunction.  *See In re Eber*, 687 F.3d 1123, 1128 (9th Cir. 2012) ("The permanent injunction under § 524(a)(2) . . . enjoins creditor actions related to *discharged debts*." (emphasis added)).  Nor, for that matter, is it clear Defendants sought to collect the debt as a personal liability of Plaintiff and not in an in rem action.  *See Johnson*, 501 U.S. at 84 ("Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property.").  Without more, the Court cannot determine the facts of this case even properly give rise to a § 524(a)(2) violation.

Based on the foregoing issues, the Court will dismiss this claim to the extent it is premised on § 524(a)(2); however, as it is not entirely clear what Plaintiff is attempting to allege, the Court cannot necessarily find this claim futile.  Accordingly, the Court will grant Plaintiff one further opportunity to amend as his section 2924c interference claim premised on § 524(a)(2).

**B.     11 U.S.C. § 506(b) – Undersecured Property**

The FAC also asserts an interference claim based on Defendants' alleged violations of 11 U.S.C. § 506(b).  As indicated above, the Court ordered supplemental briefing on this novel claim,

but no party  identified any case law in which courts have considered the application of § 506(b) in

such an interference claim.  That said, Defendants have not shown at this point that § 506(b) is

necessarily inapplicable as a matter of law.

The Court's initial review of the law indicates § 506(b) can apply to cases under Chapter 7

bankruptcy petitions.  Specifically, § 103(a) of the Bankruptcy Code provides that "[e]xcept as

provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter

7, 11, 12, or 13 of this title[.]"  11 U.S.C. § 103(a).[4]  Indeed, courts have held that the provisions

of 11 U.S.C. § 506 apply to cases involving Chapter 7 bankruptcies, not just those arising under

Chapters 11 and 13.  *See In re Hill*, 440 B.R. 176, 181 (Bankr. S.D. Cal. 2010) ("Section 103(a)

specifies that the provisions of Chapter 5 of the Code . . . are applicable to all bankruptcy cases.");

*In re Donahue*, 110 B.R. 41, 43 (Bankr. D. Kan. 1990) (collecting cases applying provisions of 11

U.S.C. § 506 to cases involving Chapter 7 bankruptcies; *In re Demoff*, 109 B.R. 902, 909 (Bankr.

N.D. Ind. 1989) ("[I]t must be noted that 11 U.S.C. § 506 is a provision of general applicability in

cases under Chapters 7, 11 and 13 of the Bankruptcy Code." (citing 11 U.S.C. § 103(a)); *In re

Brooks*, 24 B.R. 447, 449 (Bankr. D. Kan. 1982) (finding "11 U.S.C. § 103(a) clearly provides that

Chapter 5 of Title 11 U.S.C. applies in cases under Chapters 7, 11 or 13 of Title 11.").  As

Plaintiff underwent a Chapter 7 bankruptcy, § 506(b) appears applicable.  The issue then is

whether Plaintiff alleges plausible facts showing Defendants violated § 506, which then interfered

with Plaintiff's right to reinstatement under section 2924c.

Section 506(b) provides as follows:

> To the extent that an allowed secured claim is secured by property
> the value of which, after any recovery under subsection (c) of this
> section, is greater than the amount of such claim, there shall be
> allowed to the holder of such claim, interest on such claim, and any
> reasonable fees, costs, or charges provided for under the agreement
> or State statute under which such claim arose.

11 U.S.C. § 506(b).  A creditors' ability to charge interest under § 506(b) is dependent on at least

---

[4] The § 1161 exception is inapplicable.  *See* 11 U.S.C. § 1161 ("Sections 341, 343, 1102(a)(1), 1104, 1105, 1107, 1129(a)(7), and 1129(c) of this title do not apply in a case concerning a railroad.").

8

two factors.[5]  First, there must be an allowed secured claim—i.e., one secured by particular property.  *See* 11 U.S.C. § 506(b); *In re Read-Rite Corp.*, 2005 WL 2210659, at *2 (Bankr. N.D. Cal. Aug. 11, 2005) ("Section 506(b) only applies to 'allowed secured claims.'  The meaning of that phrase is fleshed out in § 506(a), which describes "[A]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . ." (brackets and ellipses in original)); *In re Farmers Coop. Ass'n*, 2006 WL 950189, at *3 ("[Section] 506(b) requires a creditor to have an 'allowed secured claim[.]" (citing 11 U.S.C. § 506(b)).  Second, the value of that property must be "greater than the amount of [the allowed secured] claim."  11 U.S.C. § 506(b).

Regarding the first factor, an "allowed secured claim" under § 506(b) is one that qualifies as a secured claim under § 506(a).[6]  *See Dewsnup v. Timm*, 502 U.S. 410, 420 (1992) ("The phrase

---

[5]  Section 506(b) requires a showing of four factors: "(1) the claim must be an allowed secured claim; (2) the creditor holding the claim must be over-secured; (3) the entitlement to fees, costs, or charges must be provided for under the agreement or state statute under which the claim arose; and (4) the fees, costs and charges sought must be reasonable in amount."  *In re McCormick*, 523 B.R. 151, 154 (B.A.P. 8th Cir. 2014), *appeal dismissed*, 812 F.3d 659 (8th Cir. 2016) (internal marks omitted).  As the parties do not contest the third and fourth factors at this point, the Court does not address them in this Order.

[6]  Section 506(a) states that

> (1)     An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
> (2)     If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing.  With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. § 506(a).

['an allowed secured claim'] obviously bears the meaning set forth in § 506(a) when it is used in

the subsections of § 506 . . . —for example, in § 506(b), which addresses 'allowed secured

claim[s]' that are oversecured." (brackets in original)).   "[U]nder § 506(a), a claim is secured only

to the extent of the judicially determined value of the real property on which the lien is fixed[.]"

*Id.* at 414; *see In re DeNofa*, 124 F. App'x 729, 731 (3d Cir. 2005) ("[T]he 'allowed secured

claim' . . . that we must examine for purposes of post-petition interest under § 506(b) is limited to

the extent of the value of the property of the [debtors'] bankruptcy estate which secures it."); *In re*

*Taylor*, 2008 WL 4723243, at *3 (Bankr. D. Mont. Oct. 23, 2008) ("[W]hile only oversecured

creditors are entitled to pre-confirmation interest to the extent of the value of the collateral by

virtue of § 506(b), all secured creditors holding allowed secured claims, as defined at 11 U.S.C. §

506(a), are entitled to post-confirmation interest—i.e., an amount which will provide creditors

with the present value of their allowed secured claims." (citing *Rake v. Wade*, 508 U.S. 464, 473

(1993))); *In re Farmers Coop. Ass'n*, 2006 WL 950189, at *3 (D. Kan. Apr. 7, 2006) ("[Section]

506(b) must be analyzed in conjunction with § 506(a)" where "[s]ection 506(a) defines "[a]n

allowed claim of a creditor," 11 U.S.C. § 506(b), while § 506(b) requires a creditor to have an

"allowed secured claim," 11 U.S.C. § 506(b)." (some alterations in original)); 5 Collier on

Bankruptcy ¶ 506.04 (16th ed. 2011) ("For purposes of section 506(b), an 'allowed secured claim'

is an allowed claim that qualifies as a secured claim as provided under section 506(a).").

Defendants argue "Plaintiff's alleged valuation of the Property fails without justification

that the value was judicially determined as required by Section 506(a)."  Defs.' Resp. at 5 (citing

*Matter of Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1354 (5th Cir. 1989)).  The Court does not find

much merit to Defendants' contention that Plaintiff can only assert a violation of § 506(b) if he

alleges there was a judicial determination of the value of his property.  Moreover, this argument

appears to harm Defendants more than Plaintiff.  Specifically, if Defendants are correct that there

was no judicial determination of the value of Plaintiff's property, there would be no allowed

secured claim.  And without an allowed secured claim, § 506(b) would not permit Defendants to

charge interest, etc.  Consequently, the absence of a judicial determination of the value of

Plaintiff's property would appear to support—not hurt—Plaintiff's claim that Defendants were not

10

United States District Court
Northern District of California

1    allowed to charge interest.  In sum, the Court is not persuaded that Plaintiff's claim must fail based

2    on a lack of a judicially determined property valuation.

3            Assuming there was a judicial determination of the property value, and therefore an

4    allowed secured claim, Defendants' ability to charge interest is still not guaranteed.  The second

5    factor of § 506(b) provides that only oversecured creditors may charge interest.  *See United States*

6    *v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (under § 506(b), "'[s]uch claim' refers to an

7    oversecured claim.  The natural reading of the phrase entitles the holder of an oversecured claim to

8    postpetition interest and, in addition, gives one having a secured claim created pursuant to an

9    agreement the right to reasonable fees, costs, and charges provided for in that agreement.").

10   Conversely, § 506(b) has a "substantive effect of denying undersecured creditors postpetition

11   interest on their claims[.]"[7]  *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,*

12   *Ltd.*, 484 U.S. 365, 372 (1988); *see In re SNTL Corp.*, 571 F.3d 826, 844 (9th Cir. 2009)

13   ("*Timbers* provided that an undersecured creditor could not receive postpetition interest on the

14   unsecured portion of its debt." (citing *Timbers*, 484 U.S. at 380)); *see also* 5 Collier on

15   Bankruptcy ¶ 506.04[1] (16th ed. 2011) ("Section 506(b) provides that postpetition interest, fees,

16   costs or charges may be added as part of the allowed amount of an allowed secured claim to the

17   extent that the claim is oversecured.").  Courts in this district and elsewhere have so held as well.

18   *See In re Qmect, Inc.*, 2007 WL 4357566, at *7 (Bankr. N.D. Cal. Dec. 11, 2007) ("Section

19   506(b), which excludes post-petition interest and attorneys' fees from an undersecured creditor's

20   secured claim . . . ."); *In re S. Side House, LLC*, 474 B.R. 391, 413 (Bankr. E.D.N.Y. 2012)

21   ("Section 506(b) permits an oversecured creditor to receive post-petition interest and other

22   charges, and generally prohibits an undersecured creditor from receiving these benefits.  [ ] Stated

23   another way, under Section 506(b) and *Timbers*, an undersecured creditor may not receive

24   payment in excess of its original claim." (citation omitted)); *Matter of Arvelo*, 176 B.R. 349, 354

25

26   ───────────────────

27   [7] It is unclear over what period of time Defendants allegedly charged interest, i.e., whether the
     interest was charged pre- or post-petition.  As the parties do not raise a timing issue and there are
     no facts presently before the Court to suggest that timing may be problematic, the Court does not
28   further address the issue.

1   (Bankr. D.N.J. 1995) ("[W]e conclude that [the lender], as an undersecured creditor, is not entitled

2   to post-petition, pre-confirmation interest payments under § 506(b).").[8]

3          As such, if Defendants are undersecured creditors, § 506(b) limits their ability to charge

4   postpetition interest.  Therein, however, lies the problem.  The FAC lacks sufficient allegations

5   that Defendants were undersecured creditors because it does not provide plausible facts indicating

6   the value of Plaintiff's property was less than the amount of the debt owed on it.  *See Matter of*

7   *Glenn*, 796 F.2d 1144, 1146 (9th Cir. 1986) ("[A]n undersecured creditor is one who holds an

8   allowed secured claim for an amount which exceeds the value of the property securing it; an

9   oversecured creditor is one who holds an allowed secured claim in an amount less than the value

10  of the property securing it.").  Plaintiff asserts only that he

11          is informed and believes that on December 13, 2010, Plaintiff's
            property was valued at $400,000, while the debt owed on the
12          property totaled approximately $565,000.  Plaintiff is informed and
            believes that the amount of the secured debt against Plaintiff's
13          property was more than the value of the property until the middle or
            end of the year 2015.
14

15  FAC ¶ 14.  He further alleges he "is informed and believes that his property remained underwater

16  until mid to late 2015.  Thus, the value of Plaintiff's property was less than the secured claim held

17  by Bosco Credit, LLC, serviced by Franklin Credit Management Corporation."  *Id.* ¶ 16.

18         "The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a

19  plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly

20  within the possession and control of the defendant, or where the belief is based on factual

21  information that makes the inference of culpability plausible."  *Arista Records, LLC v. Doe 3*, 604

22  _____

23  [8] Defendants rely on *Rake* for the proposition that "[s]ection 506(b) . . . applies only from the date
    of filing through the confirmation date."  Defs.' Resp. at 5.  That reliance is misplaced.  In *Rake*,
24  the Supreme Court noted that "[i]n *Ron Pair* we held that the right to postpetition interest under §
    506(b) is 'unqualified' and exists regardless of whether the agreement giving rise to the claim
25  provides for interest."  508 U.S. at 468 (citing *Ron Pair*, 489 U.S. at 241).  Indeed, the *Ron Pair*
    Court held that § 506(b) "entitles the holder of an oversecured claim to postpetition interest and, in
26  addition, gives one having a secured claim created pursuant to an agreement the right to
    reasonable fees, costs, and charges provided for in that agreement.  Recovery of postpetition
27  interest is unqualified."  489 U.S. at 241.  What Defendants fail to recognize is that *Ron Pair*
    concerns *oversecured* creditors.  *See id.*; *Rake*, 508 U.S. at 468 ("Section 506(b) . . . provides that
28  holders of oversecured claims are 'allowed' postpetition interest on their claims.").  Because
    Plaintiff alleges Defendants are undersecured, *Rake* is inapposite.

United States District Court
Northern District of California

United States District Court
Northern District of California

F.3d 110, 120 (2d Cir. 2010) (internal marks and citations omitted).  Several district courts in the Ninth Circuit have adopted the Second Circuit's standard.  *See Slack v. Int'l Union of Operating Eng'rs*, 83 F. Supp. 3d 890, 900 (N.D. Cal. 2015) ("Because details of the precise nature of [d]efendants' management practice rests solely in the hands of [d]efendants at this juncture, greater specificity is not required at this pleading stage." (citing *Arista Records*, 604 F.3d at 120-21, additional citations omitted)); *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 2015 WL 3488923, at *4 (N.D. Cal. June 2, 2015) (adopting *Arista Records* standard); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2013 WL 57861, at *6 (N.D. Cal. Jan. 3, 2013) ("Rule 8 pleading standards do not prevent a plaintiff from 'pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant[.]'" (quoting *Arista Records*, 604 F.3d at 120)); *GCIU-Emp'r Ret. Fund v. Quad/Graphics, Inc.*, 2016 WL 3027336, at *3 (C.D. Cal. May 26, 2016) ("Even after *Iqbal* and *Twombly*, numerous courts have held that facts may be pleaded on information and belief—especially where, as here, the underlying evidence is peculiarly within the defendant's possession.").

The value of Plaintiff's property is not a fact exclusively in Defendants' possession; there is no reason to believe such information is not accessible to Plaintiff.  Such facts can substantiate the allegation that his property was worth less than the debt owed on it.  *See Paramount Pictures Corp. v. Axanar Prods., Inc.*, 2016 WL 2967959, at *4 (C.D. Cal. May 9, 2016) (allegations based on "information and belief" sufficiently stated claim for copyright infringement where the "allegations based on 'information and belief' [were] bolstered by specific facts and many allegations gleaned directly from comparing the works at issue and from [d]efendants' public postings on social media.").  As noted above, a judicial determination could support his contention, but even if one does not exist, there are other ways to plausibly show the value of his property.  But without such facts to substantiate his claims, Plaintiff's bare allegations do not meet the plausibility standard under *Twombly/Iqbal* at this point.

In sum, the Court does not have grounds at this juncture to find Plaintiff's reinstatement claim predicated on 11 U.S.C. § 506(b) necessarily futile; however, Plaintiff has not currently alleged plausible facts to support the underlying elements of such a claim.  Consequently, the

Court will grant leave to amend.

## CONCLUSION

Based on the foregoing analysis, the Court **DISMISSES** the Fifth Cause of Action of Plaintiff's FAC but does so with **LEAVE TO AMEND** in accordance with this Order.  Plaintiff must file an amended pleading, if any, **by November 3, 2016**.  The amended pleading shall reflect the concerns articulated by the Court both in this Order and the first MTD Order.

Additionally, pursuant to Federal Rule of Civil Procedure 16(b) and Civil Local Rule 16-10, the Court will hold a Case Management Conference **on December 8, 2016** at 10:00 a.m. in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.  This conference shall be attended by lead trial counsel for parties who are represented.  Parties who are proceeding without counsel must appear personally.  No later than seven calendar days before the Case Management Conference, the parties shall file a Joint Case Management Statement containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/mejorders.  The Joint Case Management Statement form may be obtained at: http://cand.uscourts.gov/civilforms.  If the statement is e-filed, no chambers copy is required.

**IT IS SO ORDERED.**

Dated: October 4, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California

14