1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7    SCOTT FITZGERALD,
                Plaintiff,
8
9         v.
10   BOSCO CREDIT, LLC, et al.,
                Defendants.
11

Case No. 16-cv-01473-MEJ

**ORDER RE: MOTIONS TO DISMISS**

Re: Dkt. Nos. 46, 57

12
13                              **INTRODUCTION**
14         Plaintiff Scott Fitzgerald filed this action against Defendants Bosco Credit, LLC
15   ("Bosco"); Franklin Credit Management Corporation ("FCMC"); and T.D. Service Financial
16   Corporation ("T.D. Service") (collectively, "Defendants") alleging Defendants engaged in
17   wrongful foreclosure activities.  Pending before the Court are two Motions to Dismiss pursuant to
18   Federal Rule of Civil Procedure ("Rule") 12(b)(6): (1) T.D. Service's Motion to Dismiss (T.D.
19   Mot., Dkt. No. 46) and (2) Bosco and FCMC's Motion to Dismiss (BF Mot., Dkt. No. 57).
20   Plaintiff filed Oppositions (T.D. Opp'n, Dkt. No. 51; BF Opp'n, Dkt. No. 58), and Defendants
21   filed Replies (T.D. Reply, Dkt. No. 52; BF Reply, Dkt. No. 59).  Having considered the parties'
22   positions, the relevant legal authority, and the record in this case, the Court **GRANTS** both
23   Motions for the following reasons.
24                              **BACKGROUND**
25         Plaintiff is the owner of property located at 1075 Redondo Way, Livermore, California
26   94550 (the "Property").  Second Am. Compl. ("SAC"), Dkt. No. 45.  The Property is Plaintiff's
27   principal residence and is security for a loan made for personal, family, and/or household
28   purposes.  *Id.*  Around October 2004, Plaintiff obtained a secured mortgage loan with CalState 9

1  Credit Union (the "Loan"). *See id.* ¶ 13. Around May 2008, Plaintiff's Loan transferred to Bosco,

2  and FCMC began servicing the Loan. *Id.*

3  　　　Around January 2010, Plaintiff fell behind in his mortgage payments. *Id.* ¶ 14. In March

4  2010, the principal balance of the Loan was $95,038.32, and Plaintiff's mortgage payment was

5  $604.63. *Id.* ¶ 15. This remained the same in July 2010. *See id.* As of July 2010, the amount

6  past due on the Loan was $5,999.56. *Id.*

7  　　　On December 13, 2010, Plaintiff filed a Chapter 7 bankruptcy petition in the Northern

8  District of California. *Id.* ¶ 16. At the time of Plaintiff's bankruptcy, the Property was

9  underwater. *Id.* Plaintiff "is informed and believes" that he received a discharge "on December

10  13, 2010[] and on March 8, 2011[.]" *Id.* He "is informed and believes" Bosco was aware that

11  Plaintiff's personal obligation to pay the debt had been discharged. *Id.*

12  　　　Between December 2010 and late 2014, the value of the Property was less than the claims

13  secured by it. *Id.* ¶ 17. In February 2011, the balance of loans[1] secured by the Property totaled

14  approximately $556,889.24, while the value of the Property ranged from $315,000 and $345,000.

15  *Id.* ¶ 18. In February 2012, the balance of loans secured by the Property totaled approximately

16  $448,015.51, whereas the Property was valued between $311,000 and $351,000. *Id.* ¶ 19. In

17  February 2013, the balance of loans secured by Plaintiff's property totaled approximately

18  $448,241.57; the Property was worth approximately $400,000. *Id.* ¶ 20. In December 2014, the

19  balance of loans secured by the Property totaled approximately $518,437.35; the Property was

20  valued at approximately $515,000. *Id.* ¶ 21.

21  　　　On October 20, 2015, FCMC, on behalf of Bosco, sent Plaintiff a Notice of Default and

22  Intent to Accelerate indicating Plaintiff was past due on his payments since January 2010. *Id.* ¶¶

23  22, 91. The Notice stated the total delinquency owed on the Loan was $59,381.07: $45,734.88 in

24  charged interest and $495.00 in late charges. *Id.* (both). As of the date of this statement, the

25

26  _____

27  [1] The SAC refers to the plural "loans." *See* SAC ¶¶ 18-20 ("[T]he balance of loan*s* secured by
    Plaintiff's property . . . ." (emphasis added)). However, Plaintiff alleges only the existence of a
    single loan, that is, the October 2004 loan he obtained from CalState 9, which was transferred to

28  Bosco. *See* SAC ¶ 13; *see also id.* ¶¶ 18-20 (referring to "the loan at issue"). It is unclear what
    other loans Plaintiff obtained, if any.

Property was worth more than the balance of loans that secured it. *Id.* ¶ 23.

At the time that T.D. Service began servicing the Loan, the Loan was in default. *Id.* On December 11, 2015, T.D. Service, on behalf of Bosco, sent Plaintiff correspondence which was an attempt to collect a debt. *Id.* The correspondence indicated it was sent pursuant to the Fair Debt Collection Practices Act ("FDCPA") and related to a debt owed to Bosco. *Id.* The letter further indicated that as of December 15, 2015, the delinquency owed for the Property was $62,080.53 and that the total amount owed on the loan was $95,038.32 for unpaid principal, plus accrued interest, any accrued insufficient funds fees, escrow advances, late charges, or suspense credits, and attorney and/or trustee fees and costs. *Id.*, *see id.*, Ex. A (Debt Validation Notice dated December 11, 2015 ("Debt Validation Notice")).

On February 25, 2016, T.D. Service sent Plaintiff a statement indicating that the total amount necessary to pay off the Loan was $148,338.35: $95,038.32 in principal; $51,745.33 in interest; $495 in fees; and $1,014.70 in foreclosure fees and costs. *Id.* ¶ 25; *see id.*, Ex. B (letter dated February 25, 2016 from T.D. Service ("Feb. 25 Letter")). Also on February 25, 2016, T.D. Service sent Plaintiff a reinstatement calculation as of February 29, 2016, which stated the total amount necessary to reinstate the loan was $64,566.84, of which $45,734.88 was for interest and fees. *Id.* ¶ 26.

Plaintiff initiated this action on March 24, 2016. *See* Compl., Dkt. No. 1. On May 2, 2016, he filed his First Amended Complaint ("FAC") alleging five causes of action: (1) violation of the FDCPA, 15 U.S.C. § 1692e, against T.D. Service for allegedly making inflated monetary demands; (2) another violation of the FDCPA, 15 U.S.C. § 1692e, against T.D. Service for allegedly misrepresenting the status of a debt owed; (3) a violation of California's Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act" or "RFDCPA"), Cal. Civ. Code § 1788.17, against Bosco for allegedly making inflated monetary demands; (4) another violation of the Rosenthal Act against Bosco for allegedly misrepresenting the status of a debt owed; (5) a violation of California Civil Code section 2924c against Bosco and FCMC for allegedly interfering with his statutory reinstatement of the Loan by sending Plaintiff reinstatement notices that included amounts for unlawfully charged interest on Plaintiff's Loan while the Property was

underwater. *See* FAC ¶¶ 21-81, Dkt. No. 15.

The Court dismissed the FAC. *See* First Mot. to Dismiss ("MTD") Order, Dkt. No. 38; Second MTD Order, Dkt. No. 44. The Court held Plaintiff failed to allege facts that T.D. Service is a debt collector under the FDCPA or went beyond the statutorily mandated communications required for foreclosure. First MTD Order at 7-14. The Court also found Plaintiff failed to state a Rosenthal Act claim, as there were no facts showing how Bosco's conduct went beyond mere foreclosure proceedings or how it went outside California's statutorily-required communications. *Id.* at 14-16. Finally, the Court dismissed Plaintiff's section 2924c claim, which Plaintiff predicated on violations of the Bankruptcy Code, 11 U.S.C. §§ 506(b) and 524(a). *See* Second MTD Order; *see* FAC ¶¶ 72-73, 81. The Court held Plaintiff failed to allege facts sufficient to show how §§ 506(b) or 524(a) supports a section 2924c violation and also failed to allege how Bosco and FCMC interfered with his efforts to reinstate the Loan. *See* Second MTD Order.

Plaintiff timely filed the SAC, in which he asserts six causes of action: (1) a violation of the FDCPA, 15 U.S.C. § 1692e, against T.D. Service; (2) another violation of the FDCPA, 15 U.S.C. § 1692f, against T.D. Service; (3) a violation of the Rosenthal Act, Cal. Civ. Code § 1788.17, against T.D. Service and Bosco; (4) another violation of the Rosenthal Act, Cal. Civ. Code § 1788.17, against Bosco; (5) a violation of California Civil Code section 2924c against all Defendants; and (6) declaratory relief against Bosco. SAC ¶¶ 27-102.

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for

United States District Court
Northern District of California

more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## REQUEST FOR JUDICIAL NOTICE

Before turning to the parties' substantive arguments, the Court addresses T.D. Service's and Bosco and FCMC's Requests for Judicial Notice ("RJN"). T.D. RJN, Dkt. No. 46-1; BF RJN, Dkt. No. 57-1. Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Documents in the public record may be judicially noticed to show, for example, that a judicial proceeding occurred or that a document was filed in

another case, but a court may not take judicial notice of findings of facts from another case. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record."). Nor may a court take judicial notice of any matter that is in dispute. *Lee*, 250 F.3d at 689-90; *see also Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n.13 (9th Cir. 1998) (finding judicial notice inappropriate where the facts to be noticed were not relevant to the disposition of the issues before the court).

**A.    T.D. Service's RJN**

T.D. Service requests the Court take judicial notice of a Notice of Default, recorded on December 9, 2015 as instrument number 2015323988 in the office of the Alameda County Recorder. *See* T.D. RJN, Ex. A. As this is a matter of public record, the Court takes judicial notice of this document.

**B.    Bosco and FCMC's RJN**

Bosco and FCMC request the Court take judicial notice of the following documents:

1.  A Revolving Credit Deed of Trust recorded on October 18, 2004, as Instrument No. 2004466079 in the Official Records of the Alameda County Recorder's Office ("County Recorder"). BF RJN, Ex. 1.

2.  An Assignment of Deed of Trust to Bosco, recorded on July 8, 2008 as Instrument No. 200820987. *Id.*, Ex. 2.

3.  Plaintiff and M. Fitzgerald's voluntary Chapter 7 petition bankruptcy case filed on December 13, 2010 in the United States Bankruptcy Court, Northern District of California, Case No. 10-74257-EDJ ("Bankruptcy Case"). *Id.*, Ex. 3.

4.  The March 8, 2011 Discharge of Debtor and Final Decree in Plaintiff's Bankruptcy Case. *Id.*, Ex. 4.

5.  A Notice of Default and Election to Sell Under Deed of Trust recorded on December 9, 2015 as Instrument No. 2015323988 by the County Recorder. *Id.*, Ex. 5.

6.  The contents of the court docket for the Bankruptcy Case obtained from the

PACER website, www.pacer.gov, on January 11, 2017. *Id.*, Ex. 6.

The Court takes judicial notice of Exhibits 1, 2, 5, and 6 as these are matters of public record. The Court also takes judicial notice of Exhibits 3 and 4, as these are court filings.

## DISCUSSION

**A.      First and Second Causes of Action: FDCPA**

Plaintiff alleges both FDCPA causes of action against T.D. Service based on the communications T.D. Service sent to him: the Debt Validation Notice and the February 25 Letter. *See* SAC ¶¶ 27-52. Plaintiff's first cause of action asserts a violation of § 1692e, which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. His second cause of action asserts a violation of § 1692f, which prohibits "a debt collector" from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Plaintiff does not further specify which provisions of either statute T.D. Service allegedly violated.

1.      <u>15 U.S.C. § 1692e</u>

The Court first addresses whether T.D. Service qualifies as a debt collector under § 1692e. "There are four elements to an FDCPA cause of action: (1) the plaintiff is a 'consumer' under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a 'debt collector' under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a-1692o." *Wheeler v. Premiere Credit of N. Am., LLC*, 80 F. Supp. 3d 1108, 1112 (S.D. Cal. 2015) (citing *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004)). In other words, "[t]he FDCPA imposes liability only when an entity is attempting to collect debt." *Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571 (9th Cir. 2016) (citing 15 U.S.C. § 1692(e)). The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5); *see Ho*, 858 F.3d at 571 ("For the purposes of the FDCPA, the word 'debt' is synonymous with 'money.'"). A "debt collector" includes any person: (1) "who uses any instrumentality of

interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another."  15 U.S.C. § 1692a(6).

To be liable under 15 U.S.C. § 1692e, T.D. Service must a debt collector.  The Ninth Circuit has explicitly held that under § 1692e, "actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the FDCPA."  *Ho*, 858 F.3d at 572.  This is because

> [t]he object of a nonjudicial foreclosure is to retake and resell the security, not to collect money from the borrower.  California law does not allow for a deficiency judgment following non-judicial foreclosure.  This means that the foreclosure extinguishes the entire debt even if it results in a recovery of less than the amount of the debt.

*Id.* at 571-72 (citing Cal. Civ. Code § 580d(a); additional citations omitted).  In other words, "[b]ecause the money collected from a trustee's sale is not money owed by a consumer, it isn't 'debt' as defined by the FDCPA."  *Id.* at 572; *see id.* ("'[F]oreclosing on a trust deed is an entirely different path' than 'collecting funds from a debtor.'" (quoting *Hulse v. Ocwen Fed. Bank*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002))).

California Civil Code section 2924(a)(1) further provides that a "trustee, mortgagee, or beneficiary . . . shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default."  A foreclosing entity therefore "c[an]not conduct [a] trustee's sale until it sen[ds] the notice of default and the notice of sale."  *Ho*, 858 F.3d at 573; *see Moeller v. Lien*, 25 Cal. App. 4th 822, 830 (1994) ("The foreclosure process is commenced by the recording of a Notice of Default and Election to Sell by the trustee.").  "If [a trustee] can administer a trustee's sale without collecting a debt, it must be able to maintain that status when it takes the statutorily required steps to conduct the trustee's sale."  *Ho*, 858 F.3d at 573.  As such, "[t]he right to 'enforce' the security interest necessarily implies the right to send the required notices; to hold otherwise would divorce the notices from their context."  *Id.*

While Plaintiff conclusorily alleges that "[p]ursuant to 15 U.S.C. [§] 1692a(6), T.D.

8

Service is a debt collector because [it] regularly collects or attempts to collect debts owed or due or asserted to be owed or due to another" (SAC ¶¶ 30, 41), he alleges no facts to support this assertion. Plaintiff further argues *Ho* is inapplicable because "Plaintiff's claims do not arise from [T.D. Service]'s actions in foreclosing on Plaintiff's [P]roperty." T.D. Opp'n at 4 (citing SAC ¶¶ 33, 47-48, 61). He instead contends T.D. Service violated the "FDCPA . . . by sending an inflated payoff demand in February 2016 (SAC at ¶¶ 33, 61) and sending a debt collection demand which included a demand for payment on interest which was charged to Plaintiff's [L]oan in violation of the Bankruptcy Code." T.D. Opp'n at 4.

The Court previously rejected this argument, finding Plaintiff's allegations in fact arise out of a foreclosure proceeding:

> The Court cannot ignore the context of Plaintiff's allegations and the other facts he has pleaded. Plaintiff explicitly alleges T.D. "record[ed] a Notice of Default" (FAC ¶ 18) and all but admits T.D. was the trustee in arguing that T.D. could be both a trustee and a debt collector. *See* T.D. Opp'n at 4-5 (arguing that being a foreclosure trustee and a debt collector are not "mutually exclusive" roles and that "the demands at issue contain the express language that T.D. Service's correspondence were 'an attempt to collect a debt.'")[, Dkt. No. 21]; *see also Warwick* [*v. Bank of N.Y. Mellon*, 2016 WL 2997166, 2016 WL 2997166, at *3-4 [(C.D. Cal. May 23, 2016)] (generally acknowledging there are four parties in a typical foreclosure case: the trustor (the debtor), the beneficiary (the lender), the trustee (a "common agent" for the borrower-trustor and beneficiary-lender who essentially executes the trust), and finally, the loan servicer (who generally collects payments and performs other mortgage servicing obligations)); FAC ¶ 6 (alleging Bosco is the beneficiary); *id.* ¶ 7 (alleging Franklin is the servicer). Plaintiff did not object to the Court taking judicial notice of the Notice of Default or suggest there are any facts in dispute in that Notice related to whether T.D. was the trustee. *See* [] Reqs. for Judicial Notice[, Dkt. Nos. 20-2, 22-1]. Instead, Plaintiff seems to argue that the absence of an allegation (i.e., that T.D. was the trustee), creates a factual dispute requiring the parties to move forward to summary judgment before resolution. In this context though, the Court cannot rest on the absence of a factual allegation to prohibit T.D.'s legal argument. *See Martin K. Eby Const. Co. v. Jacobs Civ., Inc.*, 2006 WL 1881359, at *12 (M.D. Fla. July 6, 2006) (plaintiff argued "the Court's analysis on motion to dismiss is limited to the face of the amended complaint[,]" and amended its complaint to "replac[e] [] specific references with more generic and vague allegations . . . to avoid the consequences of the doctrines of res judicata and collateral estoppel[,]" but ultimately the court discerned from the other allegations that the claims were barred as a matter of law); *see also Pawlak v. Nix*, 1996 WL 560360, at *5 (E.D. Pa. Sept. 30, 1996) (finding plaintiff's claims barred even though she had not alleged

9

certain facts in a specific attempt to avoid application of the *Rooker-Feldman* doctrine).

First MTD Order at 12-13. While Plaintiff does not allege in the SAC that T.D. Service recorded a Notice of Default as he did in the FAC (*compare* SAC *with* FAC ¶ 18), he does not object to the Court taking judicial notice of the Notice of Default recorded on December 9, 2015. This document states "RECORDING REQUESTED BY T.D. SERVICE COMPANY" and lists "T.D. SERVICE COMPANY AS TRUSTEE." *See* T.D. RJN, Ex. A at ECF pp. 4, 6 (capitalization in original); BF RJN, Ex. 5 at ECF pp. 92, 94 (capitalization in original). As it found in its First MTD Order, the Court cannot find the absence of an allegation means Plaintiff's claims do not arise out of foreclosure activity. On the contrary, the SAC and Opposition again make it clear that T.D. Service's conduct was part of a foreclosure proceeding. *See* SAC ¶ 7 (alleging Bosco is the owner and beneficiary and FCMC is the servicer of the Loan); *id.* ¶¶ 24, 32 (alleging T.D. Service, on behalf of Bosco, sent the Debt Validation Notice to Plaintiff); Debt Validation Notice (letter from T.D. Service stating "Your mortgage Loan . . . has been referred to our office *for foreclosure based upon a default . . . .*" (emphasis added)); T.D. Opp'n at 5 ("Plaintiff does not allege debt collection violations against [T.D. Service] for its actions within its capacity as *foreclosure trustee.*" (emphasis added)).

Plaintiff does not explain how the addition of interest and other fees, even if improper, transforms a communication sent as part of the nonjudicial foreclosure process into something beyond the enforcement of a security interest. First, the mere fact that T.D. Service communicated with Plaintiff does not violate the FDCPA. "Enforcement of a security interest will often involve communications between the forecloser and the consumer. When these communications are limited to the foreclosure process, they do not transform foreclosure into debt collection." *Ho*, 858 F.3d at 574. Second, the SAC contains no facts showing that T.D. Service sought to collect a debt from Plaintiff: neither the Debt Validation Notice nor the February 25 Letter in fact demand payment: both communications inform Plaintiff about the amount of debt, provide a breakdown of the debt, and explain how he may pay the debt. *See* Debt Validation Notice; Feb. 25 Letter. This does not constitute a demand for payment. *See Ho*, 858 F.3d at 574 ("The notices at issue in our case didn't request payment from Ho.[] They merely informed Ho that the foreclosure process

had begun, explained the foreclosure timeline, apprised her of her rights and stated that she could contact [the lender] (not [the trustee defendant]) if she wished to make a payment. These notices were designed to protect the debtor." (footnote omitted)). The SAC thus insufficiently alleges T.D. Service engaged in debt collection activities.

That T.D. Service was engaged in the enforcement of a security interest does not, however, immunize it from all FDCPA claims. The *Ho* court made clear that

> [w]e do *not* hold that the FDCPA intended to exclude all entities whose principal purpose is to enforce security interests. If entities that enforce security interests engage in activities that constitute debt collection, they are debt collectors. We hold only that the enforcement of security interests is not always debt collection.

858 F.3d at 573 (emphasis in original). But as explained above, Plaintiff fails to allege sufficient facts that T.D. Service did more than enforce a security interest and instead engaged in activities that constitute debt collection. The Court previously granted Plaintiff leave to amend to allege facts showing how T.D. Service went beyond the statutorily mandated communications required for foreclosure. First MTD Order at 13-14. He failed to do so and instead reasserted the same allegations and argument the Court already rejected. Nothing in the record suggests Plaintiff possesses facts that show T.D. Service did more than enforce the Loan and which Plaintiff was unable to allege previously. As such, the Court DISMISSES Plaintiff's FDCPA claims WITH PREJUDICE.

2. 15 U.S.C. § 1692f

Plaintiff bases his § 1692f claim on a violation of the Bankruptcy Code. *See* SAC ¶¶ 39-52; T.D. Opp'n at 4 ("Plaintiff alleges that Defendant violated the FDCPA . . . by sending an inflated payoff demand in February 2016 (SAC at ¶[¶] 33, 61) and sending a debt collection demand which included a demand for payment on interest which was charged to Plaintiff's loan in violation of the Bankruptcy Code (SAC at ¶[¶] 47-48)."); *id.* at 5 (same). He alleges T.D. Service improperly added interest and late fees to the Loan, despite the fact that the Property was unsecured or undersecured. *Id.* ¶¶ 45-48. He contends that

> [b]ecause [the Bankruptcy Code,] 11 U.S.C. § 506(b)[,] limits a creditor's ability to charge interest and late fees on an undersecured debt, it was improper for Plaintiff's [L]oan to accrue interest and

11

late fees while the [P]roperty was underwater. Therefore, [T.D. Service]'s demand for interest and fees which were improperly assessed during this time, amounts to a demand for a debt which was unauthorized by law, in violation of 11 U.S.C. 1692f.

*Id.* ¶ 49. Plaintiff does not identify which specific provision(s) of § 1692f T.D. Service's alleged Bankruptcy Code violation in turn violates. *See* SAC.

The Ninth Circuit has rejected attempts to use the FDCPA as remedy for a Bankruptcy Code violation. *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510-11 (9th Cir. 2002). In *Walls*, the plaintiff alleged the lender "engaged in unfair and unconscionable collection practices, which are forbidden by the FDCPA, by trying to collect her debt in violation of the discharge injunction" she received in a bankruptcy proceeding. *Id.* at 510. Recognizing "[t]here [was] no escaping that [the plaintiff's] FDCPA claim [was] based on an alleged violation of [11 U.S.C.] § 524," the Ninth Circuit held that "[w]hile the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the Bankruptcy Code." *Id.* In so holding, the *Wall* court found the "complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code . . . demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike." *Id.* (internal quotation marks omitted); *see* 11 U.S.C. § 105 (establishing court's power to enforce Bankruptcy Code). The court was not persuaded that "Congress intended to allow debtors to bypass the [Bankruptcy] Code's remedial scheme when it enacted the FDCPA." *Walls*, 276 F.3d at 511; *see id.* ("Nothing in either Act persuades us that Congress intended to allow debtors to bypass the Code's remedial scheme when it enacted the FDCPA."). To allow debtors to do so would "create a new remedy would put [courts] in the business of legislating." *Id.* at 507. The Ninth Circuit therefore "agree[d] with the Sixth Circuit's view in *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000), that it is not up to [the courts] to read other remedies into the carefully articulated set of rights and remedies set out in the Bankruptcy Code." *Id.* Because the plaintiff's "remedy for violation of § 524 no matter how cast lie[d] in the Bankruptcy Code, her simultaneous FDCPA claim [was] precluded." *Id.* Plaintiff here cannot premise his FDCPA claim on a violation of the Bankruptcy Code.

Plaintiff's second FDCPA claim is based on 11 U.S.C. § 506(b) and 15 U.S.C. § 1692f, different sections of the Bankruptcy Code and FDCPA, respectively, than the sections the Ninth Circuit analyzed in *Walls*. Nevertheless, the *Walls* analysis is applicable to the instant case, as 11 U.S.C. § 105, the remedial scheme at issue in *Walls*, also applies to § 506(b). *See* 11 U.S.C. § 103 ("[C]hapters 1, 3, and 5 of this title apply in a case under chapter 7 . . . of this title[.]"); SAC ¶¶ 1, 16, 44, 73, 85 (alleging Plaintiff filed for Chapter 7 bankruptcy). Moreover, nothing in the *Walls* reasoning suggests that holding is limited to § 1692e, rather than the FDCPA as a whole. The Court therefore finds Plaintiff cannot assert a § 1692f claim based on a violation of the Bankruptcy Code. For that reason, the Court DISMISSES Plaintiff's § 1692f claim WITH PREJUDICE to the extent it is based on the Bankruptcy Code.

**B.      Third and Fourth Causes of Action: Rosenthal Act**

Plaintiff's third and fourth causes of action allege violations of the Rosenthal Act, Cal. Civ. Code § 1788.17. SAC ¶¶ 53-82. His third cause of action, which he asserts against T.D. Service and Bosco, arises from the February 25 Letter. *See id.* ¶¶ 53-66. Plaintiff alleges an unidentified "Defendant's demand of Plaintiff for an inflated balance on the loan in February 2016 is a false, deceptive, and misleading representation regarding the amount of the loan which it made in connection with its collection of the loan."[2] *Id.* ¶ 62. Plaintiff's fourth cause of action alleges that by improperly demanding interest and late fees while the Property was underwater, Bosco violated 11 U.S.C. § 506(b), which in turn violates the Rosenthal Act. *Id.* ¶¶ 67-82.

The purpose of the Rosenthal Act is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts[.]" Cal. Civ. Code § 1788.1(b). In addition to providing its own standards governing debt-collection practices, the Rosenthal Act also requires that, with limited exceptions, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the FDCPA. *Id.* § 1788.17. The Rosenthal Act defines a "debt

---

[2] Although Plaintiff asserts his third cause of action against T.D. Service and Bosco, he does not specifically identify which Defendant made the demand for an inflated Loan balance or whose conduct caused him harm. *See* SAC ¶¶ 62, 64-65 (utilizing singular "Defendant").

13

collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). This "includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection, but does not include an attorney or counselor at law." *Id.* "The definition of 'debt collector' is broader under the Rosenthal Act than it is under the FDCPA, as the latter excludes creditors collecting on their own debts." *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015) (quoting *Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011)) (brackets omitted). The Rosenthal Act defines a "debt" as "money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person." Cal. Civ. Code § 1788.2(d).

The Court previously dismissed Plaintiff's Rosenthal Act claim on the ground that Plaintiff "fail[ed] to allege conduct beyond the ordinary foreclosure process." First MTD Order at 15. The Court found Plaintiff "ha[d] not plausibly alleged that [Bosco or its agent's] 'attempts' [to collect an inflated balance] were based on anything more than the ordinary foreclosure process." *Id.* The SAC's Rosenthal Act claims are based on the same conduct as the FAC's Rosenthal Act claim, namely, the Debt Validation Notice and the February 25 Letter. *Compare* SAC ¶¶ 44-69 *with* FAC ¶¶ 44-57. The Court again finds Plaintiff fails to establish a Rosenthal Act claim.

First, Plaintiff recycles his argument that "Defendants' actions fit squarely within the meaning of debt collection activity, rather than foreclosure activity." BF Opp'n at 7; *see* T.D. Opp'n at 10 ("Plaintiff's claim for violation of the Rosenthal FDCPA is not premised on Defendant's actions in foreclosing on Plaintiff's property. [] Plaintiff alleges that the February 2016 payoff demand, a demand not sent in order to foreclose on a security, was inflated by a total of almost $50,000.00."). The Court previously rejected this argument:

> Finally, Plaintiff argues "Defendant cannot transform Plaintiff's claims into allegations pertaining to foreclosure activity, simply because a non-judicial foreclosure had been started monthly before the alleged misconduct." [First BF Opp'n] at 5[, Dkt. No. 29]. He contends doing so "would allow all lender/servicer activity which occurs after the initiation of a non-judicial foreclosure activity to be immune from the ambit of the FDCPA, which would wholly nullify the effect of the FDCPA as to lenders and servicers" and that "[i]f Defendant insists that its conduct was nonjudicial foreclosure

activity, then it must prove this fact with evidence on an evidence-based motion or at trial, not as part of a motion to dismiss pursuant to Rule 12(b)(6)." *Id.* at 5-6. But this argument fails for two related reasons. First, the case law in these circumstances indicates a plaintiff fails to assert a plausible claim under the Rosenthal Act (or the FDCPA) by merely alleging there was a debt collection activity when that activity relates solely to ordinary foreclosure proceedings. While Plaintiff is correct that no court has immunized all activities related to debt collection, courts have required a plaintiff to provide allegations specifically alleging how an alleged debt collector's actions go "beyond mere foreclosure proceedings[.]" *Perez [v. Ocwen Loan Servicing, LLC]*, 2015 WL 9286554, at *3 [(E.D. Cal. Dec. 21, 2015)]; *see, e.g., Rockridge Tr.* [v. *Wells Fargo, N.A.*], 985 F. Supp. 2d [1110,] 1137 [(N.D. Cal. 2013)] (plaintiff asserted plausible FDCPA claim where the challenged acts were related to loan modification *negotiations* as opposed to the execution of the nonjudicial foreclosure process). Second, and relatedly, the Court is not transforming Plaintiff's claims into allegations pertaining to foreclosure activities—as discussed above, Plaintiff's own allegations and arguments indicate Defendants were engaged in foreclosure related activities, which are largely confirmed by Defendants' judicially-noticeable documents. Indeed, Plaintiff's claim under California Civil Code section 2924c is based on allegations that Defendants interfered with his right to reinstate his loan (*see* FAC ¶ 81)—a right [] section 2924c accords to debtors *before foreclosure*. *See* Cal. Civ. Code § 2924c.

First MTD Order at 15-16 (emphasis in original). The SAC offers no additional facts that lead the Court to change its conclusion that T.D. Service's and Bosco's actions were taken as part of anything but a foreclosure proceeding, which does not constitute a debt under the Rosenthal Act. *See Castellanos v. Countrywide Bank NA*, 2015 WL 3988862, at *3 (N.D. Cal. June 30, 2015) ("[T]to the extent that [p]laintiff alleges [d]efendants violated the FDCPA or RFDCPA through foreclosure-related activities, such claims are not cognizable under either statute.").

To that end, Plaintiff again fails to allege facts "demonstrating *how* Defendants' actions went beyond mere foreclosure proceedings or *how* they went outside of California's statutorily-required communications." *Id.* at 16 (emphasis in original). Plaintiff simply alleges Defendants' February 25 Letter sought to collect an inflated balance, but he offers no facts as to how this communication goes beyond mere foreclosure proceedings or California's statutorily-required communications. *See, e.g., Castellanos*, 2015 WL 3988862, at *3 (finding plaintiff alleged violations of FPDPA and RFDCPA that went beyond foreclosure activities where plaintiff alleged defendant engaged in "harassing conduct in an attempt to collect on a debt"); *Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759, at *20 (N.D. Cal. Jan. 3, 2011) (finding allegations was "based not

15

on the mere act of foreclosure but rather, on allegedly deceptive statements [made in a letter] . . . which were beyond the scope of the ordinary foreclosure process," including, among others, "the words 'good news'" and "the statement that foreclosure counsel would be instructed to delay foreclosure proceedings as long as the recipients made timely payments under the Agreement"). Importantly, as noted, there are no facts that demonstrate the Debt Validation Notice or the February 25 Letter requested for payment of a debt, that is, that these communications did more than provide information about the amount due on Plaintiff's Loan. *See Ho*, 858 F.3d at 574; *cf.* Cal. Civ. Code § 1788.1 (purpose of Rosenthal Act is to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the *collection of consumer debts*" (emphasis added)). Although Plaintiff alleges the Notice was deceptive because it stated an inflated balance, he has not alleged facts sufficient to show the balance was incorrect, nor that the statements were deceptive.

Second, "for trustees engaged in the process of non-judicial foreclosure, California Civil Code section 2924(b) provides immunity from liability under the Rosenthal Act." *Razawi v. F.D.I.C.*, 2009 WL 2914120, at *4 (E.D. Cal. Sept. 9, 2009). Indeed, that statute provides that "the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage. In performing the acts required by this article, a trustee shall not be subject" to the Rosenthal Act. Cal. Civ. Code § 2924(b). As noted, Plaintiff alleges no facts that T.D. Service sent the February 25 Letter to Plaintiff for reasons other than part of a nonjudicial foreclosure proceeding, nor are there facts that T.D. Service did not make these representations in good faith. Accordingly, the Court finds Plaintiff fails to state a Rosenthal Act claim against T.D. Service.

Finally, Plaintiff's fourth cause of action against Bosco predicates liability under the Rosenthal Act on a violation of 11 U.S.C. § 506(b). SAC ¶ 79. Plaintiff argues that Bosco "violated California Civil Code § 1788.17 by charging unauthorized interest and fees to Plaintiff's

loan in violation of the Bankruptcy Code, thereby violating 15 U.S.C. [§] 1692f."[3]  BF Opp'n at 7.

As discussed above, Plaintiff cannot utilize the FDCPA to remedy a § 506(b) violation.  Plaintiff

cannot predicate his Rosenthal Act claim on the FDCPA claim which this Court already rejected.

*Cf.* Cal. Civ. Code § 1788.17 (requiring compliance with FDCPA).  Plaintiff alleges no other basis

for which a § 506(b) violation supports a Rosenthal Act claim.

       In sum, the Court finds Plaintiff fails to state a Rosenthal Act claim against either T.D.

Service or Bosco.  The Court accordingly DISMISSES Plaintiff's third and fourth causes of

action.  The Court further finds Plaintiff cannot base his Rosenthal Act claim on a Bosco's alleged

violation of § 506(b).  For that reason, the Court DISMISSES Plaintiff's fourth cause of action

WITH PREJUDICE.  As to Plaintiff's third cause of action, the Court previously allowed Plaintiff

to amend so he could allege facts showing how T.D. Service and Bosco went beyond a mere

foreclosure proceeding.  As explained above, he did not do so; Plaintiff instead relied again on the

argument the Court had rejected, namely, that T.D. Service and Bosco's actions were not taken as

part of a foreclosure.  Because the Court has afforded Plaintiff a prior opportunity to amend and as

nothing in the record suggests Plaintiff now possesses facts which he was unable to assert in his

SAC, the Court dismisses his third cause of action WITH PREJUDICE.

## C.      Fifth Cause of Action: California Civil Code § 2924c

       Plaintiff asserts his fifth cause of action against all Defendants.  As is relevant here,

California Civil Code section 2924c(a)(1) provides that

> [w]henever all or a portion of the principal sum of any obligation
> secured by deed of trust or mortgage on real property . . . has . . .
> been declared due by reason of default . . . , the trustor or mortgagor
> . . . may pay to the beneficiary or the mortgagee or their successors
> in interest, respectively, the entire amount due, at the time payment
> is tendered, with respect to (A) all amounts of principal, interest,
> taxes, assessments, insurance premiums, or advances actually
> known by the beneficiary to be, and that are, in default and shown in
> the notice of default, under the terms of the deed of trust . . . , (B) all
> amounts in default on recurring obligations not shown in the notice
> of default, and (C) all reasonable costs and expenses . . . that are
> actually incurred in enforcing the terms of the . . . deed of trust . . .
> and thereby cure the default theretofore existing[.]

---

[3] Plaintiff does not assert his § 1692f claim against Bosco.  *See* SAC at 8.

Upon the borrower's written request, the lender must provide "a written itemization of the entire amount" owed. Cal. Civ. Code § 2429c(b)(1). The borrower may cure the default any time between the "recordation of the notice of default until five business days prior to the date of sale set forth in the initial recorded notice of sale." Cal. Civ. Code § 2924c(e).

Plaintiff alleges that "[b]y providing inaccurate demands for reinstatement in October 2015 and February 2016, which more than tripled the amount actually due to reinstate the loan, Defendant[s] thereby interfered with Plaintiff's ability to reinstate the loan." SAC ¶ 94. He asserts that "[h]ad Plaintiff been provided the correct reinstatement demand, he could have, and would have been able to tender the amount owed to reinstate the loan, as Plaintiff had cash available to do so." *Id.* ¶ 93. Plaintiff further alleges that "since pursuant to 11 U.S.C. [§] 506(b), Bosco Credit, LLC was not entitled to interest, fees, costs, or charges under the agreement, Plaintiff alleges that Defendants' demands for interest, fees, and costs as a condition of reinstatement thereby interferes with Plaintiff's statutory right to reinstatement pursuant to Civil Code 2924c." *Id.* ¶ 96.

As explained above, there are no facts that the Debt Validation Notice or the February 25 Letter were in fact demands for payment. Moreover, that Plaintiff possessed the funds to reinstate the Loan but for the addition of interest and other fees is not an allegation that he actually attempted to cure the default. Plaintiff alleges no facts that he sought to correct the reinstatement demand, that Plaintiff actually attempted to make a payment, or that Defendants refused, or refused to respond to, his offer to tender payment. As such, the Court cannot find Plaintiff states a reinstatement claim. *See Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1001 (2016), *reh'g denied* (Mar. 11, 2016), *as modified* (Mar. 11, 2016) (where plaintiffs did not allege they attempted to cure the default by making required monthly payments, the California Court of Appeal "conclude[d] they do not adequately allege violations of section 2924c"); *Selznick v. Wells Fargo Bank, N.A.*, 2015 WL 12697874, at *6 (C.D. Cal. Apr. 10, 2015) ("Plaintiff does not allege a violation of section 2924c because she does not allege that she sufficiently tendered the amount necessary to cure her arrears."); *Gerard v. Wells Fargo Bank Nat'l Ass'n*, 2015 WL 12778775, at *6 (C.D. Cal. Mar. 11, 2015) (dismissing section 2924c claim where, among other things, the

"[p]laintiff d[id] not allege any facts indicating that she attempted to cure the default prior to January 28, 2014 and in accordance with the terms set forth in the reinstatement letter"); *Estrada v. Nationstar Mortg., LLC*, 2013 WL 4120803, at *4 (N.D. Cal. Aug. 9, 2013) (dismissing section 2924c claim where plaintiffs did not allege the lender refused their offer to tender the deficient amount, did not allege they demanded an accounting of their current default, and alleged no facts showing lender prevented them from curing default).

Moreover, the Court finds Plaintiff cannot use a section 2924c claim to remedy a Bankruptcy Code violation. By alleging Defendants improperly added interest and other fees onto the Loan balance, Plaintiff predicates his reinstatement claim on an alleged violation of 11 U.S.C. § 506(b). SAC ¶ 96. Section 506(b) provides for the payment of certain fees and costs to an over-secured creditor:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). Plaintiff must allege four elements to state a Section 506(b) claim: "(1) the claim must be an allowed secured claim; (2) the creditor holding the claim must be over-secured; (3) the entitlement to fees, costs, or charges must be provided for under the agreement or state statute under which the claim arose; and (4) the fees, costs and charges sought must be reasonable in amount." *In re McCormick*, 523 B.R. 151, 154 (B.A.P. 8th Cir. 2014), *appeal dismissed*, 812 F.3d 659 (8th Cir. 2016) (internal quotation marks omitted); *see also In re Hoopai*, 581 F.3d 1090, 1098 (9th Cir. 2009) (pursuant to § 506(b), "a creditor is entitled to attorneys' fees if (1) the claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement." (internal quotation marks omitted)).

"[W]hile . . . not all state claims related to bankruptcy may be preempted by the [Bankruptcy] Code, . . . the Ninth Circuit and th[e Bankruptcy Appellate] Panel have steadfastly held that the Code preempts substantive state law claims and remedies for alleged misconduct that occurs in connection with a bankruptcy case." *In re Chaussee*, 399 B.R. 225, 232 (B.A.P. 9th Cir.

2008).  For instance, in holding the Bankruptcy Code preempts state malicious prosecution actions based on events that take place during bankruptcy proceedings, the Ninth Circuit found that

> a mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike.[] While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal.  It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process.

*MSR Exp., Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910,914 (9th Cir. 1996) (footnote omitted).  "[T]he highly complex laws needed to constitute the bankruptcy courts and regulate the rights of debtors and creditors also underscore the need to jealously guard the bankruptcy process from even slight incursions and disruptions brought about by state malicious prosecution actions." *Id.*  That "Congress . . . provide[d] a number of remedies designed to preclude the misuse of the bankruptcy process. . . . suggests that Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents." *Id.* at 915.

But not "all state actions related to bankruptcy proceedings are subject to the complete preemption doctrine." *Id.* at 1092 ("We recognize that because the common law of the various states provides much of the legal framework for the operation of the bankruptcy system, it cannot be said that Congress has completely preempted all state regulation which may affect the actions of parties in bankruptcy court." (internal quotation marks omitted)).  Courts have generally found preemption only where the Bankruptcy Code provides remedies for the at-issue conduct and where "uniform rules are particularly important." *Id.* (internal quotation marks omitted).

Plaintiff is precluded from seeking relief from a § 506(b) violation through means outside of the Bankruptcy Code.  The Ninth Circuit has not yet addressed whether the Bankruptcy Code provides the sole remedy for a § 506(b) violation.  However, the Third Circuit, relying on *Walls*, has held that "the lone remedy [for a § 506(b) violation] is a contempt proceeding pursuant to § 105(a) in bankruptcy court." *In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005).  In so holding, the Third Circuit "consider[ed] the analogous § 524 case law applicable to [the] § 506(b)-based claim"

and "agree[d] with the reasoning of [*Walls* and *Pertuso*], and [saw] no reason why the rule should be different for actions asserted under § 506(b) rather than § 524." *Id.* at 455-56.

The Court agrees with the reasoning of *Joubert*. Section 105(a) applies equally to § 506(b) as it does to § 524(a). *See* 11 U.S.C. § 103(a) ("Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title, and this chapter, sections 307, 362(o), 555 through 557, and 559 through 562 apply in a case under chapter 15."). "Bankruptcy courts require full control of the remedies available for addressing improprieties occurring in the cases on their dockets." *Chaussee*, 399 B.R. at 234. To allow Plaintiff to use section 2924c as a means to seek relief for violations of the Bankruptcy Code would create a "back door [to] what [Plaintiff] cannot accomplish through the front door—a private right of action." *Walls*, 276 F.3d at 510. "Put simply, Congress did not intend to allow a debtor to bypass the statutory scheme clearly embodied in the language of the Code." *Chaussee*, 399 B.R. at 237. The Court therefore finds Plaintiff cannot state a section 2924c claim based on a violation of § 506(b).

For these reasons, the Court DISMISSES Plaintiff's section 2924c claim. To the extent this claim is based on a § 506(b) violation, the dismissal is WITH PREJUDICE. However, the Court will grant Plaintiff leave to amend to allege facts showing that he attempted to reinstate his Loan, if he did attempt to do so.

**D.      Sixth Cause of Action: Declaratory Relief**

Plaintiff's final cause of action against Bosco seeks declaratory relief pursuant to the California Declaratory Relief Act ("CDRA"), Cal. Civ. Proc. Code § 1060. SAC ¶ 99. Specifically, Plaintiff requests "a judgment of declaratory relief regarding the status of his loan and the amount actually due on the loan." *Id.* ¶ 100.

As a preliminary matter, the Court must determine whether the CDRA or the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), applies. "The operation of the Declaratory Judgment Act is procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (internal quotation marks and edits omitted); *see DeFeo v. Procter & Gamble Co.*, 831 F. Supp. 776, 779 (N.D. Cal. 1993) ("The propriety of granting declaratory relief in federal court is a

procedural matter."); *Guccione v. JPMorgan Chase Bank, N.A.*, 2015 WL 1968114, at *21 (N.D. Cal. May 1, 2015) (relying in part on *DeFeo*, 831 F. Supp. at 779, to apply DJA, rather than CDRA, in diversity action). As Plaintiff bring federal claims and filed this action directly in federal court, the Court finds the DJA, not the CDRA, governs Plaintiff's declaratory relief claim. *See Judan v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 3115172, at *11 (N.D. Cal. July 21, 2017) (applying DJA rather than CDRA); *Diamond Real Estate v. Am. Brokers Conduit*, 2017 WL 412527, at *9 (N.D. Cal. Jan. 31, 2017) (same); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1219 (N.D. Cal. 2014) (finding DJA applied in diversity case).

As is relevant here, the DJA[4] provides that

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C.A. § 2201. To determine whether declaratory relief is appropriate, courts consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted).

The Court DISMISSES Plaintiff's declaratory relief claim. First, "as a procedural statute dependent on an underlying cause of action, the DJA makes available an 'additional remedy to litigants' without creating an independent 'theory of recovery.'" *Judan v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 3115172, at *11 (N.D. Cal. July 21, 2017) (internal quotation marks omitted); *see Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 968 (N.D. Cal. 2015) ("A claim for declaratory relief is not a stand-alone claim, but rather depends upon whether or not [p]laintiff states some other substantive basis for liability." (internal quotation marks omitted)).

---

[4] "[W]hether the state or federal statute applies makes little difference as a practical matter, as the two statutes are broadly equivalent." *Adobe Sys.*, 66 F. Supp. 3d at 1219; *compare* 28 U.S.C. § 2201(a) *with* Cal. Civ. Proc. Code § 1060.

Because the Court has dismissed Plaintiff's other claims, the Court must also dismiss his declaratory relief claim. *See Diamond Real Estate*, 2017 WL 412527, at *11 ("Absent an underlying claim for relief, their claims for declaratory relief must be dismissed.").

Second, dismissal is also proper because Plaintiff seeks a determination of past rights. "[N]umerous federal district courts have found that the DJA operates prospectively, not to redress past wrongs." *Judan*, 2017 WL 3115172, at *11 (collecting cases); *see San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("Because plaintiffs seek declaratory . . . relief only, there is a further requirement that they show a very significant possibility of future harm; it is insufficient for them to demonstrate only a past injury."); *see also Spencer v. Kemna*, 523 U.S. 1, 18 (1998) (Courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong."). Bosco and FCMC argue Plaintiff's declaratory relief claim fails because he "seeks only a determination of [Bosco's] *past* rights and obligations." BF Mot. at 21 (emphasis in original). Plaintiff disputes this characterization, arguing Bosco "continues to claim that it properly added interest to Plaintiff's [L]oan while the [P]roperty was undersecured. It now seeks these monies to bring the debt current and as part of a total payoff of the [L]oan." BF Opp'n at 16.

The SAC makes clear that Plaintiff contends the addition of interest was improper while the Property was underwater. *See, e.g.*, SAC ¶¶ 46-47, 75-76 ("Plaintiff's property was underwater, and the loan at issue was either unsecured or under secured through that time period. Thus, Defendant's ability to charge interest on the loan was limited during that time, pursuant to 11 U.S.C. § 506(b). Despite this fact[,] between December 2010 and late 2014, Plaintiff's loan was charged interest."); *id.* ¶¶ 49, 79 ("[I]t was improper for Plaintiff's loan to accrue interest and late fees while the property was underwater."); *id.* ¶ 91 (alleging "the total necessary to cure the default on the loan was $59,381.07 over sixty-nine months of payments, $45,734.88 of which was charged interest and $495.00 of which was late charges, most of which had been improperly charged while Plaintiff's property was underwater."). The SAC also suggests the Property is no longer underwater. *See id.* ¶ 2 ("On October 20, 2015, after Plaintiff's property began to have equity . . . ."); *id.* ¶ 86 ("[B]etween December 2010 and December late 2014, Plaintiff's property

was underwater.").  Based on these allegations, the Court cannot find Plaintiff has alleged there is a future controversy for which the Court may grant him relief.  *See Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981) (DJA "brings to the present a litigable controversy, which otherwise might only be tried in the future").  There are no allegations that the Property is currently underwater and that Bosco is currently improperly charging him interest.  Even if Bosco is now requesting payment for interest accrued while the Property was underwater or undersecured, the act of charging interest occurred—as Plaintiff alleges—from 2010 to 2014, ending approximately two years *before* Plaintiff initiated this litigation.  As such, the Court finds dismissal is appropriate.  *See Judan*, 2017 WL 3115172, at *11 ("While [p]laintiffs' request for declaratory relief is phrased in terms of determining the parties' respective rights and duties with relation to the Deed of Trust, the essential issue posed is actually whether [d]efendant had the right to increase [p]laintiffs' principal balance . . . —as it has *already* done. [] Therefore, [p]laintiffs' request for declaratory relief is dismissed."  (emphasis in original; citations to first amended complaint omitted)).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** T.D. Service's and Bosco and FCMC's Motions to Dismiss as follows:

(1) Plaintiff's § 1692e claim is DISMISSED WITH PREJUDICE.  His § 1692f claim is DISMISSED WITH PREJUDICE to the extent it is based on a violation of the Bankruptcy Code.

(2) Plaintiff's Rosenthal Act claims are DISMISSED WITH PREJUDICE.

(3) Plaintiff's section 2924c claim is DISMISSED WITH PREJUDICE to the extent it is based on a violation of the Bankruptcy Code.  Plaintiff may amend this claim provided he can allege facts showing he attempted to reinstate his Loan.

(4) Plaintiff's declaratory relief claim is DISMISSED WITH LEAVE TO AMEND contingent on his ability to amend his section 2924c claim and to state facts showing he is seeking prospective relief.

24

1    Any third amended complaint shall be due no later than September 11, 2017.

2          **IT IS SO ORDERED.**

3

4    Dated: August 21, 2017

5    _____

6    MARIA-ELENA JAMES
     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California